**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Appellant,**

v.

**MISSISSIPPI PUBLISHERS CORPORATION, et al., Appellees.**

**No. 21911.**

United States Court of Appeals
Fifth Circuit.

July 26, 1966.

William Fauver, Atty., Dept. of Labor, Bessie Margolin, Associate Sol., Dept. of Labor, Charles Donahue, Sol. of Labor, Carin A. Clauss, Atty., Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty., for appellant.

L. Arnold Pyle, John C. Sullivan, Sr., C. Arthur Sullivan, Jackson, Miss., for appellees, Watkins, Pyle, Edwards & Ludlam, Sullivan, Sullivan & Keyes, Jackson, Miss., of counsel.

Before BROWN, BURGER,* and WISDOM, Circuit Judges.

BURGER, Circuit Judge:

This is an appeal by the Secretary of Labor from an order entered by the United States District Court for the Southern District of Mississippi continuing for one year the Secretary's pending action to enjoin Defendants-Appellees from violating the minimum wage, overtime and record-keeping provisions of the Fair Labor Standards Act.[1]

■■ After this appeal was docketed the Appellee moved to dismiss the appeal on the ground that the District Court's continuance was not an appealable order. Whatever may be the status of a routine order of continuance for some brief period, a continuance of one year operates in this context as an effective denial of an injunction and in our view such action is appealable under 28 U.S.C. § 1292(a) (1) 1964. Goldberg v. Cockrell, 303 F.2d 811 (5th Cir. 1962). Moreover, the District Judge expressly made final under Fed.R.Civ.P. 54(b) his ruling that Appellee Corporation's district advisers in the circulation department are exempt from the Act's requirements as executives within the meaning of Section 13 (a) (1)[2] and the Secretary's regulations thereunder; that order is plainly appealable.

Mississippi Publishers Corp. is a family owner corporation which publishes two newspapers in Mississippi. Appellees T. M. Hederman Jr. and R. M. Hederman Jr. are corporate officers and managing heads of the Corporate Appellee. Appellees stipulated that the Corporation came within the coverage of the Act.

The Wage and Hour Division of the Department of Labor investigated Appellees a number of times in recent years; the investigations here pertinent occurred in 1959 and 1961. At the conclusion of the 1959 investigation Appellees were advised that their contracts with the district advisers in the circulation department violated the Act because they failed in several ways to comply with the requirements of Section 7(e).[3] However, the investigation supervisor observed that the district advisers met all the requirements for the executive exemption under Section 13(a) (1) except as to amount of pay. The investigation report concluded that Appellees were or might be in violation of the Act because of failure to keep accurate records of the time worked by these and other employees. As to one other employee the investigation supervisor felt that the employer had been violating the minimum wage standards and advised Appellees that they owed that employee back pay. The result of this investigation was summed up with the conclusion that no further action should be taken and that neither the employee nor the Department would benefit by any further efforts to secure payment of back wages. It was recommended that the case be closed on the basis of full assurance of future compliance with the Act and regulations.

---

* Of the D.C. Circuit, sitting by designation.

1. Fair Labor Standards Act of 1938, §§ 6, 7, 11(c), 15(a) (1), 15(a) (2), 15 (a) (5), 52 Stat. 1062–63, 1066, 1068, as amended, 29 U.S.C. §§ 206, 207, 211 (c), 215(a) (1), 215(a) (2), 215(a) (5) (1964).

2. (a) The provisions of sections 6 and 7 shall not apply with respect to—
    (1) any employee employed in a bona fide executive, administrative, or professional capacity, or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of the Administrative Procedure Act * * *)
    * * * * *
    Fair Labor Standards Act § 13(a) (1), as amended, 75 Stat. 71 (1961), 29 U.S.C. § 213(a) (1) (1964).

3. Added by 63 Stat. 446 (1949), as amended, 29 U.S.C. § 207(e) (1964). Contracts drawn to comply with this provision of the Act are frequently called Belo contracts, for the section is an enactment into statute of roughly the standards approved by the Supreme Court in Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942).

The second investigation led to a conference between the investigator and the individual Appellees in June 1961, the investigator reporting various violations. The investigator concluded that as to the district advisers and many editorial department employees who were employed under contracts which attempted to come within Section 7(e), proper time records had not been kept and that some men had not been paid the minimum wage.

The complaint was filed on December 20, 1961, and a subsequent pretrial order recited that the plaintiff Secretary of Labor alleged violations as to certain circulation department employees, certain editorial employees, and as to John H. Davis, superintendent of the engraving department.

The District Court found "as to the record keeping experience of this business, that there were failures to keep such accurate records on some occasions with respect to several employees, but no employee was ever told or expected to falsify any such record, or not to file an accurate report of his time." He found that there had been no violation of the record-keeping requirements of the Act since prior to January 1963. He found that at the time of trial Davis was keeping accurate records of his time and accurately reporting it "though he did not previously do so." The same finding was made with respect to editorial department employees.

As to the district advisers, the Court held that they were "presently operating with the defendants in an executive capacity" and were therefore exempt under Section 13(a) (1) despite undisputed evidence that the district advisers were receiving pay which was precisely at the minimum level set by regulation for executives and despite his finding that the car allowance furnished by Appellees "only partially reimburses the advisor for his car expense and upkeep and operation thereof." [4]

The District Court concluded that it should not issue an injunction at that time but continued the case for one year "to await developments and see in the meantime if any need or necessity should arise or exist therefor." The District Court stated its standard for determining the propriety of issuance of an injunction as follows:

It should not be and is not the policy of this Court to employ the extraordinary process of injunction with any promiscuity or laxity. It should not be employed in marginal cases involving innocent and almost unavoidable instances of violation of this Act which will most probably never occur again. * * * The burden is upon the Secretary to prove by a preponderance of the evidence the *absolute necessity* for an injunction at the time of the hearing of the case. * * * The injunction is an extraordinary process and should not issue unless *absolutely necessary* to compel a prompt and proper compliance with this Act.
[Emphasis added.]

■ This standard is incorrect. Walling v. Panther Creek Mines, Inc., 148 F. 2d 604, 605 (7th Cir. 1945). "This Court has many times ruled that when an em-

---

4. The District Court summed up its findings:

It is the factual conclusion of the Court that the defendants have not been in violation of any provision of the Fair Labor Standards Act since January 1963. They have innocently violated the record-keeping provisions of the Act with respect to some of the employees in the Circulation Department, in the Editorial Department and in the Engraving Department in the past, but those situations have been corrected. They were not corrected under any sort of compulsion or duress, but were corrected as quickly as possible when called to the attention of these defendants with the suggestion as to the course to pursue with respect thereto. There has never been any willful, wanton, or obstinate disobedience to the policy of the Act on the part of the defendants, or refusal or failure to comply with the instructions and to correct marginal infractions promptly. The defendants have always manifested a bona fide desire and intention to comply with the law and not to resume any wrongful act.

ployer, without excuse or explanation, violates the provisions of the Fair Labor Standards Act the district court as a general rule should issue an injunction restraining the employer from further violations." Goldberg v. Mathews, 303 F.2d 814, 817 (5th Cir. 1962). "One unexplained offense is enough. The Wage and Hour Division cannot reasonably be charged with the responsibility of checking back on past violators to make sure that they are obeying the laws." Goldberg v. Cockrell, 303 F.2d 811, 814 (5th Cir. 1962).

The facts already found by the District Court demonstrate that an injunction should have been issued as demanded by the Secretary of Labor. "The decision whether an injunction should issue to restrain an employer from future violations of the Fair Labor Standards Act lies initially in the discretion of the district court. That discretion, however, is subject to certain firm limitations." Goldberg v. Cockrell, supra, 303 F.2d at 813.

■■■ We need not reach the question whether the "innocent" violations such as here were found by the District Court to have been "finally but slowly corrected" would, of themselves, require the issuance of an injunction; in some circumstances minimal violations already corrected might render injunctive measures superfluous. But here we do not have minimal or isolated violations. For example, the District Judge found that the violations continued at least from 1959 until 1963, even though the Appellees had received warnings in 1959. Continuance of violations in the face of official warnings and conduct continuing such violations for more than a year after the complaint was filed removes this case from the category where an injunction is unnecessary. The District Court recognized that "The defendants depended upon their employees to keep the statutory records of the time and overtime. This function is, indeed, the primary duty of the employers under the Act and may not be delegated to the employees so as to excuse the employers for any neglect or default in the connec-

tion." The record-keeping requirements are fundamental underpinnings of the Act, for only by relying on employers' records can the Secretary of Labor with his limited facilities hope to be able to enforce the substantive provisions. Failure to keep accurate records can obscure a multitude of minimum wage and overtime violations.

Entirely apart from the factors previously discussed we are able to rest our holding on the Appellees' present relationship with their district advisers, which we find violative of the Act. These district advisers are employees of the newspaper in charge of recruiting, directing, and helping individual carriers who deliver the newspapers to subscribers. The advisers pick up the papers and take them to various points where the route carriers call for them; later the advisers check to make sure that the route carriers have made their pickups. If any boys are unable to perform, the district adviser obtains a substitute or does the work himself. The district advisers also check on deliveries and on subscriber complaints. Some part of the remainder of the day is spent helping carriers with solicitations and collections, as well as recruiting new route carriers.

■ Appellant admits that these duties would qualify the district advisers for treatment as executives and therefore exempt from the minimum wage and overtime provisions of the act, except that he contends that the advisers are not being "compensated for [their] services on a salary basis at a rate of not less than $100 per week * * * exclusive of board, lodging, or other facilities," as required by the Secretary's regulations promulgated under Section 13(a) (1) of the Act. 29 C.F.R. §§ 541.1(f), 541.117 (c) (1966). It is clear that at the time of trial the advisers were paid $100 weekly, but the Appellant contends that their automobile allowance of $12.50 a week was insufficient to pay their job-connected car expenses and therefore the salary "exclusive of * * * other facilities" did not reach $100 weekly. As we have

noted, the District Court's response to this contention was as follows:

> The advisor uses his own automobile which he furnishes to do his work for his own facility and use. The defendants make a car allowance in addition to his fixed salary which only partially reimburses the advisor for his car expense and upkeep and operation thereof.

 Appellees concede that ordinary public transport is inadequate for the work of the advisers and that some self-propelled means of transportation was necessary, but argue that other less expensive vehicles such as motorcycles were feasible. Appellees' circulation manager, however, testified that he preferred that the advisers have automobiles, and there was no showing that any district adviser had ever used a motorcycle for work. On its face it would seem obvious that it would not be feasible to carry on a motorcycle enough newspapers to supply forty route carriers; even if physically possible, this would hardly be feasible at all seasons of the year or in all weather. Appellees' circulation manager's testimony that the company made no attempt to cover through the car allowance "all expenses that a man might have on his automobile in connection with his work," amply supports the District Court finding that $12.50 was only partial reimbursement. We note that at the time the salary of district advisers was increased from $80 to $100 in 1953, their car allowance was reduced from $15–$20 to $12.50, although the testimony indicated that the consolidation of Appellees' morning and afternoon papers carried out at that time increased the district advisers' travel.

Appellees' final contentions are that the regulations in question are so vague as to offer no guidance to employers who attempt to comply with the Act and that the minimum salary requirement is not a justifiable regulation under Section 13 (a) (1) of the Act because not rationally related to the determination of whether an employee is employed in a "bona fide executive * * * capacity." These contentions lack merit. The Secretary's regulations are clear. They simply require in this context that, in order to qualify for the executive exemption, the employer must pay his district advisers at least $100 weekly over and above any employment-connected cost to them of the tools, i. e., automobiles, required for their work.

 The Appellees' attack, coming as it does so long after the passage of the Act and challenging the validity of the regulation tends to underscore the need for injunctive relief to bring home to the employer his duties and obligations under the law. The statute gives the Secretary broad latitude to "define and delimit" the meaning of the term "bona fide executive * * * capacity." We cannot say that the minimum salary requirement is arbitrary or capricious. Walling v. Yeakley, 140 F.2d 830 (10th Cir. 1944). See generally Craig v. Far West Engineering Co., 265 F.2d 251, 258–260 (9th Cir. 1959).

The order of the District Court is vacated and the case remanded to the District Court with directions to grant the injunction as prayed for.