GRAY LINE MOTOR TOURS, INC., and
Toye Bros. Airport Service, Inc.,
Plaintiffs-Appellants,

v.

CITY OF NEW ORLEANS et al.,
Defendants-Appellees.

No. 73–3791.

United States Court of Appeals,
Fifth Circuit.

Aug. 5, 1974.

Ralph L. Kaskell, Jr., Eberhard P. Deutsch, Charles F. Seemann, Jr., Frederick B. Alexius, New Orleans, La., for plaintiffs-appellants.

Maury A. Herman, Russ M. Herman, New Orleans, La., Blake Arata, City Atty., New Orleans, La., for City of New Orleans.

Benjamin J. Trombatore, H. A. Vondenstein, Kenner, La., for City of Kenner and Officials.

Herbert W. Christenberry, Jr., New Orleans, La., for defendants-appellees.

Before GOLDBERG, SIMPSON and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge.

Plaintiff-appellant, Toye Brothers, for over 30 years was the exclusive local ground carrier of air passengers at the New Orleans International Airport by virtue of a franchise agreement requiring payment of 10% of the gross revenues, with a minimum guarantee. There was no competitive bidding involved in Toye Brothers obtaining this original franchise. In 1972, when Toye Brothers' franchise contract expired, the New Orleans Aviation Board announced that in the future the ground carrier franchise would be awarded on the basis of competitive bidding. Following such bidding, the transportation franchise was awarded to the New Orleans Transportation Service, Inc., who now has the benefit of preferential parking and access at the airport, in addition to being exempt from a 15% gross receipts use charge imposed on non-franchised carriers. Toye Brothers, although a non-franchised carrier, had refused to pay the 15% charge up to the date of the district court proceedings.

On July 5, 1973, Toye Brothers filed suit in the United States District Court for the Eastern District of Louisiana against the Airport Aviation Board, and others, alleging: (1) that various burdens imposed on Toye Brothers by the Airport Authority, such as restricted parking area and restricted access to the terminal, constitutes interference with interstate commerce, and (2) that the 15% charge on Toye Brothers' gross receipts was illegally passed under state law and that it violates both the Airport Development Acceleration Act of 1973 and the United States Constitution, Article I, § 8.

After extensive preliminary proceedings, the defendants, New Orleans Avia-

tion Board, and others, moved for a judgment on the pleadings in favor of the defendants under 12(c) of the Federal Rules of Civil Procedure. A hearing was held on September 20, 1973. The district court ruled that the portion of defendants' motion to dismiss relating to Toye Brothers' allegations of burdens on interstate commerce and harassment be granted and that considerations for that court of the legality of the 15% gross revenue charge be stayed until the state courts have had an opportunity to determine its legality under state law.

Toye Brothers then appealed that order to the Fifth Circuit, alleging: (1) that the partial dismissal in the lower court was error, and (2) that the stay order was improper.

Before either of these contentions of error can be met, however, this court is faced with the question of whether the district court's order of September 21, 1973, is such an order as is appealable to this court at this time.

## I

■■ Section 1291 of Title 28 of the United States Code provides:

The Courts of Appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court.

This final judgment rule is the dominant rule in federal appellate practice. Di Bella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). Generally, an order granting a partial summary judgment is not final and therefore not appealable unless it contains a Rule 54(b) certification.[1] Coulter v. Sears, Roebuck & Co. (5th Cir. 1969), 411 F.2d 1189; Campbell v. Westmoreland Farm, Inc. (2nd Cir. 1968), 403 F.2d 939; Moore's Federal Practice, Vol .9, § 110.08 [1], pp. 112–113. The finality rule is not, however, without exception. Title 28 U.S.C. § 1292(a)(1) describes interlocutory orders that are appealable as of right. It states: "Interlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had by the Supreme Court; . . . " are appealable as of right.

■ Was this partial summary judgment tantamount to the denial of an injunction? We find that it was not, and therefore it did not fall under any of the exceptions of the finality rule. This court then has no jurisdiction to consider the question raised as to the first issue presented by the plaintiffs.

The plaintiffs had alleged that because various burdens were placed on them, interference with interstate commerce occurred. The lower court's order held that although many of the plaintiffs' passengers were in interstate commerce, plaintiffs' allegation raised issues purely local in nature which should be properly left to the Aviation Board and the Louisiana state courts for resolution.

The scope of review under 1292(a)(1) exercisable by Courts of Appeals is very

---

1. A question was raised during oral argument concerning the effect of the denial of plaintiffs' request for a 54(b) certification. An order involving injunctive relief issued prior to the entry of final judgment generally may be appealed under the statutory exception to the final judgment rule found in Section 1292(a)(1). That provision not only gives the Courts of Appeals jurisdiction to review interlocutory orders involving injunctions, but also an appeal may be perfected under that statute even when the action involves local claims or multiple parties. In other words, the appellant need not obtain a certification under 54(b) if the order entered by the district court falls under section 1292(a)(1). Injunctive orders then are considered to be outside the scope of Rule 54(b). Wright and Miller, Federal Practice and Procedure, Vol. 10, § 2658. To hold otherwise would mean that the application of the Interlocutory Appeals Statute would be subject to the district judge's discretion to enter an order and certify and this we find would be contrary to the spirit of the statute. Wright and Miller, Federal Practice and Procedure, § 2962, p. 613.

limited. As was stated in United States Steel Corporation v. Fraternal Association of Steel Haulers (3rd Cir. 1970), 431 F.2d 1046, at 1048:

> This limited review is necessitated because the grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief. Weighing these considerations is the responsibility of the district judge; only a clear abuse of his discretion will justify appellate reversal.

The test, then, is whether or not the action of the district court was clearly erroneous. We find this not to be a denial of an injunction, but rather the lower court properly controlling what issues it would have before it in trying a specific cause. No jurisdiction exists for this court to consider the partial dismissal. *Di Bella, supra.*

## II

The next question before this court is whether the stay order concerning pending state litigation involving the validity of the 15% gross receipts charge amounts to an injunction and is therefore appealable.

Whether a district court has rendered a decision relating to an injunction for purposes of an interlocutory appeal under the statute is not always easy to determine. However, a district court may not avoid immediate review of its determination simply by failing to characterize or label its decision as one denying or granting injunctive relief. If, for example, an action has the effect of denying the requested relief without actually making a formal ruling, then the refusal of the district court to issue a specific order will be treated as equivalent to the denial of a preliminary injunction and will be appealable. McCoy v. Louisiana State Board of Education (5th Cir. 1964), 332 F.2d 915; United States v. Lynd (5th Cir. 1952), 301 F.2d 818, cert. den., 371 U.S. 893, 83 S.Ct. 187, 9 L.Ed.2d 125.

The fact that injunctive relief is being sought is not sufficient in and of itself to bring a court order issued during the course of an action within the scope of the interlocutory appeals statute. For example, the denial of a summary judgment motion in an action seeking injunctive relief is not appealable as is an order denying an injunction because the only determination that has been made is that there are genuine issues of material fact to be decided at trial. Goldstein v. Cox, 396 U.S. 471, 90 S.Ct. 671, 24 L.Ed.2d 663 (1970); Switzerland Cheese Association, Inc. v. E. Horne's Market, Inc., 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966); Madry v. Sorel (5th Cir. 1971), 440 F.2d 1329. But, however, it has been held that where a district court grants a defendant's motion for partial summary judgment which in effect constitutes a final denial of the injunctive relief requested by the plaintiff, then such an order is appealable. Abercrombie & Fitch Co. v. Hunting World, Inc. (2nd Cir. 1972), 461 F.2d 1040.

Whether the order of the district court comes under 1292(a)(1) is, however, not so clear. Considering first the district court's stay order, with few exceptions, the federal courts have rejected the contention that an order staying an action is appealable under 1292(a)(1).

One exception is for an action in which the plaintiff seeks injunctive relief, including a preliminary injunction, and a stay is granted pending other litigation. It would appear that this circuit has held that in such a situation the stay acts as a denial of an injunction and is appealable under 1292(a)(1). The cases which establish this exception are, however, limited in scope and procedural posture. Furthermore, an inclusion by this court of the present case under this exception, which would broaden the exception even further and do violence to the policy against piecemeal review, should be avoided. See, Wright,

The Interlocutory Appeals Act of 1958, 23 F.R.D. 199 (1959).

The Fifth Circuit cases cited to substantiate this exception are Jackson Brewing Company v. Clarke, 303 F.2d 844 (5th Cir. 1962), cert. den., 371 U.S. 891, 83 S.Ct. 190, 9 L.Ed.2d 124 (1962), reh. den., 371 U.S. 936, 83 S.Ct. 305, 9 L.Ed.2d 272 (1962); Wirtz v. Mississippi Publishers Corporation, 364 F.2d 603 (5th Cir. 1966), and Glen Oaks Utilities, Inc. v. Houston, 280 F.2d 330 (5th Cir. 1960). In *Jackson,* Judge Tuttle stated:

> Though the appellant is perhaps correct in asserting, in its brief, that "[i]t is literally impossible to reconcile everything that has been written on this subject by the various Circuits," we think the rule which has emerged from the various decisions can be stated thus: An order staying or refusing to stay proceedings in the District Court is appealable under § 1292(a)(1) only if (A) the action in which the order was made is an action which, before the fusion of law and equity, was by its nature an action at law; and (B) the stay was sought to permit the prior determination of some equitable defense or counterclaim [footnote omitted].

The *Jackson* court concluded that the case before them did not meet this two-prong test and therefore was not appealable. An examination of the case before us demonstrates that it was not by its nature an action at law and for that reason fails to come under the test as stated in *Jackson.* See, Baltimore Contractors v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955); Morgantown v. Royal Insurance Company, 337 U.S. 254, 69 S.Ct. 1067, 93 L.Ed. 1347 (1949).

The *Wirtz* case dealt with the appealability of a continuance for one year of the Secretary of Labor's pending action to enjoin defendants from violating the Fair Labor Standards Act. Then District of Columbia Circuit Judge Burger, sitting by designation, held that a continuance of one year operates in this specific context as an effective denial of an injunction and is therefore appealable

under 1292(a)(1). Also involved in *Wirtz* was a 54(b) certification by the district judge as to another aspect of the case. This type situation simply does not exist in the case now before the court.

The *Glen Oaks* case, however, presents additional problems. There, Judge Jones stated:

> We are asked to determine whether error was committed by the district court in the entry of its stay order. But before that question is reached, we consider whether the stay order is appealable. If the order is one which grants or denies injunctive relief an appeal may be taken under 28 U.S.C. § 1292, even though the order is interlocutory and not final. Where the stay order is only a procedural step in controlling the progress of a case is not appealable. United States v. Richardson (5th Cir. 1953), 204 F.2d 552. Where stay orders such as the one before us have been issued in proceedings which, historically, fell into the category of common law actions, such orders were regarded as the equivalent of an injunctive order of a court of equity and were therefore appealable. Baltimore Contractors v. Bodinger, 348 U.S. 176 [75 S.Ct. 249, 99 L. Ed. 233] . . . It might follow that the considerations which prompted the relaxation of the rule which previously restricted abstention to cases equitable in character, would justify an elimination of the historical technical rule which regard stay orders in actions legal in nature as injunctive but did not so regard them in equitable causes. The operation of the stay order is the same in the action equitable as in the action legal and if a right of appeal should be allowed or denied in one, the same should be true in the other.

The complaint in *Glen Oaks* prayed for a temporary restraining order and a final injunction. No other relief was sought. The entry of the stay order, the court said in *Glen Oaks,* was for all practical purposes a denial of a temporary injunc-

tion. The court in *Glen Oaks* went on to say that whether the order is subject to appeal depends on its effect rather than its terminology. Judge Jones then found that the order had such attributes of finality that an appeal could be taken.

■ A more recent Fifth Circuit opinion seems to settle this question even more conclusively. In Mercury Motor Express v. Brinke (5th Cir. 1973) 475 F.2d 1086, Judge Thornberry held that in a situation where the district court denied preliminary injunctive relief and in the same order stayed further proceedings pending final action by the ICC, jurisdiction under 1292(a)(1) would lie. First, the court in *Mercury Motor* stated it is clear that jurisdiction will lie under 28 U.S.C. § 1292(a)(1) to review an order denying a preliminary injunction. Judge Thornberry noted that a stay order standing alone that is considered independently of an order denying a preliminary injunction would not be appealable, but, as was noted in his Footnote 6, a stay order which itself had the effect of denying a preliminary injunction would come under 1292(a)(1) jurisdiction. Glen Oaks Utilities v. City of Houston (5th Cir. 1960), 280 F.2d 330. That is the situation we have before us now. This court then does have jurisdiction to review the stay order of the district court.

■■ What then is the scope of the appellate review of the lower court's stay order? As a general rule, there has been a broad range of discretion to federal district courts to the disposition of motions for a stay of their own proceedings pending action elsewhere. That discretion is not, however, limitless. In the area of stays in favor of pending litigation in another court, there are several exceptions to the general rule of broad trial court discretion. Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922); Lyons v. Westinghouse Electric Corp. (2nd Cir. 1955), 222 F.2d 184, cert. den., 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (1955). In each case the freedom of choice of the court is severely circum-

scribed. One of these exceptions in which the appellate courts have made some inroads on the freedom of the district courts to refer the parties to another forum is in those cases deemed proper for federal abstention. The Supreme Court has indicated that when the issue in controversy requires that the federal court make a determination based on a previously uninterpreted state statute the interpretation should normally be made by the state courts, subject to final review by the high court. Railroad Commissioner of Texas v. Pullman Co., 312 U.S. 496, at 500, 61 S.Ct. 643, 85 L. Ed. 971 (1941). The author of the Pullman opinion, Justice Frankfurter, wrote in a 1959 decision, "We have required District Courts, and not merely sanctioned an exercise of their discretionary power, to stay their proceedings pending the submission of the state law question to state determination." Louisiana Power & Light Company v. City of Thibodaux, 360 U.S. 25, at 28, 79 S.Ct. 1070, at 1072, 3 L.Ed.2d 1058 (1959). Thus, district court discretion in this situation is limited, consisting mainly in the determination that the "exceptional circumstances" that are prerequisite to abstention really exist. Meredith v. City of Winter Haven, 320 U.S. 228, at 234, 64 S.Ct. 7, 88 L.Ed. 9 (1943).

■ The abstention doctrine allows a federal court whose jurisdiction has been properly invoked to postpone decision, pending trial in a state court, if the result might turn on issues of state law that are as yet unresolved. By requiring the parties to litigate first in the state courts this practice may render unnecessary a decision of the federal questions presented. Moreover, it is likely to lessen friction in a federal-state relationship, interference with important state functions, and tentative decisions on questions of state law. The Supreme Court has repeatedly declared that abstention does not involve the abdication of federal jurisdiction, but only the postponement of its exercise. See, e. g., England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.

Ct. 461, 11 L.Ed.2d 440 (1964); NAACP v. Button, 371 U.S. 415, 83 S. Ct. 328, 9 L.Ed.2d 405 (1963); Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959). Thus, absention can be viewed as an elaborate type of stay order justified as an assertion by the court of its equitable powers consistent with the requirements of federalism. *Pullman, supra, Glen Oaks, supra.*

Was the district court's abstention by means of a stay order appropriate to the case before it? We find that it was.

Plaintiffs-appellants contended that the 15% gross receipts charged is illegal under both state and federal law. The state law claim was based on the Louisiana Constitution, Article XIV, § 31.6(B), which provides for approval by the city council of all fees and charges passed by the Aviation Board. The City of New Orleans maintains that a municipal ordinance (828 M.C.S. § 4-12.2), which gives the Aviation Board broad authority to execute contracts and concession grants, constitutes "approval" pursuant to the State Constitution. Plaintiffs maintain that the specific approval of the 15% charge is necessary. This issue of state law has never been passed upon the Lousiana courts and obviously may be dispositive of the issues at hand. As was stated in *Pullman, supra,* "In this situation a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by state adjudication. . . . The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court."

There is no question then that the federal district court could properly exercise its discretion to await final state determination of the validity of the law in question.

That part of the district court's order staying the proceeding below is in all respects

Affirmed.

GOLDBERG, Circuit Judge (dissenting).

Because my opinion on the proper scope of federal jurisdiction in this case —both original and appellate—differs significantly from the majority's view, I must respectfully dissent. The concepts of nonappealability and abstention are here combined to quarantine appellants' judicial movement. However, the majority's melding of these doctrines does not forge a chain any stronger than its individual links; and neither principle, properly applied, renders any of the actions complained of in the district court immune to Article III *nisi prius* consideration and thereafter appellate scrutiny.

The majority correctly notes that appellants' complaint stated two separate, though related, causes of action. In its order of September 21, 1973, the district court granted judgment on the pleadings pursuant to Rule 12(c) F.R.C.P. on the claim of harassment by airport and police officials so severe as to constitute a burden on interstate commerce, and stayed proceedings on the permissibility of the 15% use charge on gross receipts "until the state courts have had an opportunity to determine its legality under state law." My brothers do not reach the action of the district court in disposing of appellants' claim of operational interference, finding it to be a "partial" judgment unaccompanied by district court certification.[1] To my mind, how-

1. Rule 54(b) of the Federal Rules of Civil Procedure provides in relevant part that:
   When more than one claim for relief is presented in an action . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims . . . only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims . . . shall not terminate the action as to any of the claims . . . and the order or other form of

ever, that ruling is subject to review by this Court on its merits as one part of an order that was in all respects final.

There is, of course, no question but that the judgment on the pleadings entered below represents a complete determination by the district court on the merits of the harassment claim. Hence, had appellants raised only that issue in their complaint of July 5, 1973, the judgment would be appealable under the terms of 28 U.S.C. § 1291.[2] Consequently, the majority's conclusion that, in the language of Rule 54(b) F.R.C.P., the September 21 order "adjudicates fewer than all the claims," must rest on its belief that the stay of federal proceedings on the use charge did not amount to a final determination on that claim for the purposes of appeal. On the basis of the Supreme Court's opinion in Idlewild Bon Voyage Liquor Corp. v. Epstein, 1962, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794, however it seems clear that the bells had indeed tolled for Toye Brothers on this point and that the stay, standing alone, would also have constituted a final decision from which an appeal would lie as of right.

In *Idlewild*, plaintiff had brought suit challenging certain aspects of the New York Alcoholic Beverage Control Law as violative of the Commerce, Import-Export, and Supremacy Clauses of the United States Constitution. The district court stayed the federal action in order to give the New York state courts an opportunity to rule on certain aspects of the litigation. In response to the State's attack on its jurisdiction to hear the appeal, the Second Circuit held that:

> decision is subject to revision at any time before the entry of judgment adjudicating all the claims . . . .

2. The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court. 28 U.S.C. § 1291.

3. There is no reference in the record to any state court action over the legality of the

Appellees' argument that this order was not final and hence unappealable under 28 U.S.C. §§ 1291, 1292 is not well taken. No parallel state actions were pending and there was no state adjudication to await. There was nothing to be done in federal court because the action there had for all intents and purposes concluded. Appellant was effectively out of court—

Idlewild Bon Voyage Liquor Corp. v. Rohan, 2 Cir. 1961, 289 F.2d 426, 428, modified on other grounds sub nom., Idlewild Bon Voyage Liquor Corp. v. Epstein, *supra*. In its own consideration of the merits, the Supreme Court explicitly approved this holding, noting that "[t]he Court of Appeals properly rejected the argument that the order of the District Court [was not final]." 370 U.S. at 715 n. 2, 82 S.Ct. at 1296. *Idlewild's* teaching, gleaned by both courts and commentators, instructs us that where, as in the present case,[3] no state court action is pending at the time of a federal court's determination to abstain, the abstention order is a final decision appealable under 28 U.S.C. § 1291. Druker v. Sullivan, 1 Cir. 1972, 458 F.2d 1272; 9 Moore's Federal Practice ¶ 110.20 [4.2] at 251.

We are faced here with a single order which disposes of two claims in different ways. Either method taken in isolation amounts to a final decision subject to appellate scrutiny at this time. I know of nothing in law or logic which would make the whole order any less than the sum of its parts.

My brothers' view on the appealability of the judgment on the pleadings makes

15% use charge on gross receipts; and both the answer filed by appellees in August of 1973 and the September 21 memorandum of the district court indicate that no such proceeding had been instituted prior to the order. The only reference to a state proceeding concerning the use charge comes in the briefs, where appellees state that on December 21, 1973, three months *after* the abstention order was entered, the City of New Orleans filed suit to collect sums alleged as due from appellants' airport operations.

extended discussion of the merits of that ruling on my part premature.[4] I cannot forbear from commenting, however, that given the stringent requirements for granting such a dismissal[5] and the necessary focus of this litigation on the actual impact of the city's policies on appellants' operations, greater inquiry into the facts—as through a hearing on the merits—seems the better course.

With regard to that portion of the order reviewed on its merits, I am unable to agree that the teaching of Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L. Ed. 971, was properly applied by the district court in staying consideration of the 15% charge. I cannot concur in a conclusion that the merits of this controversy are too delicate for the federal touch and that abstention is therefore wise and compelled. Just as state courts are assumed to be open and competent to adjudicate questions of federal law in cases properly before them, see Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, so the doctrine of pendent jurisdiction, see United Mine Workers of America v. Gibbs, 1966, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218; the Article III diversity grant, see Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and the myriad federal question litigation involving rights and relationships created by the states presuppose the ability of federal courts to interpret and apply state law. Pullman and its progeny do not dispute that general commingling of judicial authority; rather they call upon a federal court to question the propriety of determining matters of state law and the wisdom of proceeding with related issues of federal law only under certain "special circumstances." Lake Carriers' Association v. MacMullan, 1972, 406 U.S. 498, 510, 92 S.Ct. 1749, 32 L.Ed.2d 257. Hence, where resolution of a difficult and unsettled issue of state law vitally affecting an area of local concern is preliminary to consideration of a perplexing federal constitutional question, and where authoritative construction of the state statute may well eliminate the need for or limit the constitutional issues.

> abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication.

Harman v. Forssenius, 1965, 380 U.S. 528, 534, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50.

It is true that in the present case the issue of state law—whether the use charge can be properly imposed by the Aviation Board pursuant to blanket City Council approval—has never been directly addressed by the courts of Louisiana; but the mere absence of definitive state judicial construction does not automatically trigger abstention, Doud v. Hodge, 1956, 350 U.S. 485, 487, 76 S.Ct. 491, 100 L.Ed. 577. Neither perceptible complexities in the state provisions under consideration here nor possibly serious implications of this decision in the overall Louisiana scheme for governing the New Orleans airport have surfaced to justify the timidity of the court below. Moreover, a state court determination that the 15% charge has not received adequate approval by the New Orleans

4. Conversely, my own view on the finality of the September 21 order makes it unnecessary for me to reach the question of whether the judgment also operated as the denial of a preliminary injunction. I must confess, however, that a reading of the majority opinion has left me considerably perplexed on this point. All of the arguments advanced in support of review of the stay order under 28 U.S.C. § 1292(a)(1) seem equally applicable to the dismissal of the harassment claim, for which injunctive relief was also sought.

5. A claim may be dismissed on the pleadings only where it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 1957, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80. See also Continental Motors Corp. v. Continental Aviation Corp., 5 Cir. 1967, 375 F.2d 857.

City Council would doubtless bring only a temporary alleviation of the controversy, given the insistence of the city on collection of the fee. Appellants face the prospect of "the delay and expense to which application of the abstention doctrine inevitably gives rise," England v. Medical Examiners, 375 U.S. 411, 418, 84 S.Ct. 461, 466, 11 L.Ed.2d 440, only to be met at the end of the state road with an affirmance of the Board's authority or formal adoption by the city of what it has already endorsed.

When inquiry shifts to the federal questions, the cause of abstention is not materially advanced by an examination of the issues thus avoided. Appellants challenge the gross receipts charge as violative of both the Airport Development Acceleration Act of 1973 and the Commerce Clause. Though involving the constitutional principle of federal supremacy, the former argument is exclusively an issue of statutory construction; and the Supreme Court has explicitly rejected the *Pullman* doctrine as a method of postponing the interpretation of federal statutes, Propper v. Clark, 1949, 337 U.S. 472, 490, 69 S.Ct. 1333, 93 L.Ed. 1480. Nor has this Circuit's prior approach to attacks on airport use charges as unduly burdensome of interstate commerce indicated that such challenges pose difficult constitutional questions. *See* Toye Brothers Yellow Cab Company v. Irby, 5 Cir. 1971, 437 F.2d 806, 811. *Pullman* does not provide a means for delaying decision whenever a case raises related state and federal questions. Its purpose is to avoid untutored federal interference in complex state regulatory schemes, while permitting the resolution of controversies without resort to "substantial constitutional issue[s] . . . [touching] sensitive area[s] of social policy upon which the federal courts ought not to enter unless no alternative to [their] adjudication is open." Railroad Commission of Texas v. Pullman Co., *supra,* 312 U.S. at 498, 61 S.Ct. at 644. Its application to this case serves neither interest.