Ofelia IBARRA and Jose Prundea, on behalf of themselves and on behalf of all other persons similarly situated, Plaintiffs-Appellants,

v.

BEXAR COUNTY HOSPITAL DISTRICT et al., Defendants-Appellees.

No. 80–1081.

United States Court of Appeals, Fifth Circuit.

Aug. 15, 1980.

Bexar County Legal Aid Assn., Enrique Valdez, San Antonio, Tex., for plaintiffs-appellants.

Daniels, Efron & Holden, Randolph P. Tower, San Antonio, Tex., for defendants-appellees.

Susan J. Dasher, Asst. Atty. Gen., Austin, Tex., amicus curiae, for State of Texas.

Keith W. Burris, Asst. Criminal Dist. Atty., San Antonio, Tex., amicus curiae, for Bexar County, Tex.

Before HILL, RUBIN and ANDERSON, Circuit Judges.

JAMES C. HILL, Circuit Judge:

The defendants in this case are the Bexar County Hospital District (BCHD) and several of its members and officials. The dispute centers around the BCHD's official policy of requiring all aliens who are not "legal residents" of Bexar County, Texas, to pay fully, and in advance, for nonemergency medical services, while not imposing the same requirement on legal residents of the county. The sole issue presented to this Court is whether the trial judge abused his discretion by dismissing the plaintiffs' suit on abstention grounds. We affirm.

The BCHD was created pursuant to article 9, section 4, of the Texas Constitution and Tex.Civ.Stat.Ann. art. 4494n, § 1 (Vernon 1976). The constitutional provision imposes on hospital districts such as the BCHD "full responsibility for providing medical and hospital care to needy inhabitants of the county." The statute authorizes counties having a population of 190,000 or more to establish hospitals or hospital systems to "furnish medical aid and hospital care to the indigent and needy persons residing in [the] Hospital District."

The BCHD provides emergency medical services to anyone in need of them, regardless of legal residence or ability to pay. For nonemergency services, however, a distinction is made between legal residents and nonlegal residents. The cost of such services to legal residents is dependent on their ability to pay, and ranges between 5% and 100% of the hospital's regular charges. Nonlegal residents, on the other hand, are required to pay the full expected cost of the services before being admitted into the hospital. Those who wish to be admitted under the liberal payment plan must show that they fall within the definition of legal resident adopted by the BCHD in 1975:

a legal resident of Bexar County, for the purpose of receiving medical and hospital care at Bexar County hospital District facilities, is defined as a citizen either natural born or naturalized, of the United States or a registered alien who was permitted entry with the intent of establishing residency who: (a) is physically present within the geographical boundaries of Bexar County; and (b) has an intent to remain within the County either permanently or for an indefinite period; and (c) actually maintains an abode . . . within the county. A foreign born individual must show proof of his legal status in the United States either through naturalization certificate or immigration and naturalization service form 151. (Registered alien).

The two named plaintiffs in this class action were born in the Republic of Mexico. They and their families live in Bexar County. Although both contend that they are in the United States legally, neither plaintiff possesses a naturalization certificate or a Form 151. Both are in need of nonemergency medical services. This suit was filed after the plaintiffs were denied admission into a county hospital because they could not pay in advance. The complaint alleges that the BCHD's payment policy violates a variety of federal and state laws: Title VI of the Civil Rights Act of 1964; 42 U.S.C.A. § 2000d et seq.; the Civil Rights Act of 1871; 42 U.S.C.A. § 1983; the Fourteenth Amendment; the Supremacy Clause; the

Texas Constitution; the Texas Civil Rights Act, Tex.Civ.Stat.Ann. art. 6252–16, § 1 (a)(6), (7) (Vernon 1976); and Tex.Civ.Stat. Ann. art. 4494n, §§ 4, 9 (Vernon 1976).

The defendants' motion to dismiss was referred to a Magistrate, who recommended that the motion be granted on abstention grounds. With some modifications, the district court adopted the Magistrate's recommendation. The Court rested its decision primarily on *Pullman* abstention grounds, finding that the case presented an unsettled issue of state law, whose resolution in favor of the plaintiffs by a state court "would obviate the necessity for federal adjudication of the federal constitutional and statutory issues." [1]

We find that the district court correctly applied the *Pullman* abstention doctrine. One of three general categories of abstention,[2] *Pullman* abstention is appropriate " 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.' " *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)); *e. g., Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Palmer v. Jackson*, 617 F.2d 424 (5th Cir. 1980); *BT Investment Managers, Inc. v. Lewis*, 559

---

1. The district court also felt that a Texas state court would be a more appropriate forum because the case involves issues of particular concern to the State. Although it is not clear from the court's opinion, we take this statement to mean that even if *Pullman* abstention was inappropriate *Burford* abstention, *see* note 2 *infra*, would be. In view of our holding that abstention was proper under the *Pullman* doctrine, we need not speculate about whether the same result would obtain applying the principles of *Burford* abstention.

2. The other two abstention doctrines are *Burford* and *Younger* abstention. *Burford* abstention is appropriate in cases presenting important issues of state law in which the state has an overriding interest. *See Colorado River Water Conservation District v. United States*,

424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *BT Investment Managers, Inc. v. Lewis*, 559 F.2d 950, 955 (5th Cir. 1977). A federal court will invoke *Burford* abstention "to avoid needless conflict with the administration by the state of its own affairs." C. Wright, *Federal Courts* § 52, at 222 (3d ed. 1976). *Younger* abstention is appropriate "where absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings." *Colorado River Water Conservation District v. United States*, 424 U.S. at 816, 96 S.Ct. at 1245; *see Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

F.2d 950 (5th Cir. 1977). As we noted in *Palmer,* there are two prerequisites for *Pullman* abstention: "(1) there must be an unsettled issue of state law; and (2) there must be a possibility that the state law determination will moot or present in a different posture the federal constitutional question raised." At 428.

The Texas Constitution and statute employ the terms "inhabitants" and "persons residing in" to describe the class of people to whom the BCHD is required to provide medical services. The plaintiffs argue that they are "inhabitants" of and "persons residing in" Bexar County. The defendants contend that "illegal aliens" are not among the class of persons for whose benefit these laws were passed. We have found no decisions from Texas courts construing these terms. Nor have we found any cases dealing with situations so analogous that we could predict, with a reasonable degree of certainty, how the question would be resolved by the highest court of the state. The terms themselves are sufficiently vague that they reasonably could be interpreted as either party contends. We therefore agree with the district court that this case presents an unsettled issue of state law. *See* Field, *Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine,* 122 U.Pa.L.Rev. 1071, 1090–91 (1974).

If a Texas court determines that an alien without a naturalization certificate or a Form 151 is an inhabitant or a person residing in, these plaintiffs will be entitled to the relief they seek, and the federal issues will be moot. This satisfies the second requirement of the *Pullman* abstention doctrine.

Having determined that abstention was appropriate, the district court correctly dismissed the suit without prejudice. Because the Supreme Court of Texas has held that it cannot grant declaratory relief as long as a federal court maintains the case on its docket, *United States Life Ins. Co. v. Delaney,* 396 S.W.2d 855 (Tex.1965), the only way to ensure the sequence of events contemplated by the abstention doctrine is to dismiss the case. *See Harris County Commissioners Court v. Moore,* 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); *Barrett v. Atlantic Richfield Co.,* 444 F.2d 38 (5th Cir. 1971).

AFFIRMED.