John CLEVELAND, Venant Joseph Ruddy Peart, Garnett Burton, Peter Mathurin, Patrick Phillip, Gregory Schell, Sarah Cleveland, T.A. Wyner, and the American Civil Liberties Union of Florida, Inc., Plaintiffs,

v.

Dorothy WILKEN, Clerk of Court of the Fifteenth Judicial Circuit, and Robert Butterworth, In His Official Capacity as Attorney General of the State of Florida, Defendant.

No. 95–8784–CIV.

United States District Court, S.D. Florida.

Feb. 27, 1996.

Michael Ray Masinter, Fort Lauderdale, FL, James Kellogg Green, James K. Green, P.A., West Palm Beach, FL, for Plaintiffs.

Lonniell Olds, Olds & Stephens, West Palm Beach, FL, for Clerk of Court.

Scott Masel, Florida Attorney General's Office, Dept. of Legal Affairs, Civil Division, Hollywood, FL, for Butterworth.

## ORDER

GONZALEZ, District Judge.

Plaintiffs in this case are migrant farm workers and their legal services attorneys; a civil rights activist; and the American Civil Liberties Union of Florida, Inc. According to Plaintiffs, Florida Statute § 57.011 imposes upon them a constitutionally impermissible burden, and has barred or threatens to bar their access to state courts. The challenged section provides as follows:

> When a nonresident plaintiff begins an action or when a plaintiff after beginning an action removes himself or his effects from the state, he shall file a bond with surety to be approved by the clerk of $100, conditioned to pay all costs which may be adjudged against him in said action in the court in which the action is brought. On failure to file such bond within 30 days after such commencement or such removal, the defendant may, after 20 days notice to plaintiff (during which the plaintiff may file such bond), move to dismiss the action or may hold the attorney bringing or prosecuting the action liable for said costs and if they are adjudged against plaintiff, an execution shall issue against said attorney.

Fla.Stat. § 57.011. Significantly, Plaintiffs argue, the Florida Legislature has not imposed a similar bond requirement upon resident plaintiffs, nonresident defendants, or defendants who remove their assets from Florida, nor has it included any provision to accommodate the inability of indigent plaintiffs to afford the bond.

One case in which a court considered a situation similar to that presented here is *Clopper v. Merrill Lynch Relocation Management, Inc.*, 812 F.2d 1116 (9th Cir.1987). The court in that case considered the constitutionality of Or.Rev.Stat. § 20.160, which provides:

> **Liability of attorney of nonresident or foreign corporation plaintiff; security for costs.** The attorney of a plaintiff who resides out of the state or is a foreign corporation, against whom costs are adjudged in favor of a defendant, is liable to the defendant therefor; and if the attorney neglects to pay the same, upon the information of the defendant shall be punished as for a contempt. The attorney may relieve or discharge the attorney from such liability by filing an undertaking at the commencement of the action or suit, or at any time thereafter before judgment or decree, for the payment to the defendant of the costs and disbursements that may be adjudged to the attorney, executed by one or more sufficient sureties.

Or.Rev.Stat. § 20.160, *quoted in Clopper,* at 1119. This provision is supplemented by § 20.170, which provides:

> **Qualification of and exception to sureties; deposit in lieu of undertaking.**

The sureties in the undertaking described in Or.Rev.Stat. § 20.160 shall possess the qualifications of sureties in an undertaking for bail on arrest, and their sufficiency may be excepted to by the defendant at any time within five days from notice of filing the same, and if so, they shall justify in an amount not less than $200, in like manner and with like effect as sureties for bail on arrest. Until the time for excepting to the sufficiency of the sureties has expired or, if excepted to, until they are found sufficient, the attorney is liable as if no undertaking had been given. A deposit of $200 or other sum which the court or judge may direct, with the clerk, may be made in lieu of such undertaking.

*Id.*

The Court in *Clopper* first rejected the plaintiff's argument that the above provisions violated the Privileges and Immunities Clause of the Constitution, which "does not," the court held, "preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it." *Toomer v. Witsell,* 334 U.S. 385, 396, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460 (1948), *reh'g denied,* 335 U.S. 837, 69 S.Ct. 12, 93 L.Ed. 389 (1948), *quoted in Clopper,* at 1121. Thus, the Court held that the additional burdens created by § 20.160 were justified by the "potential added difficulty of collecting costs from nonresidents . . . ." *Clopper,* at 1121.

The court next held that even if the challenged statute impeded the plaintiff's right to travel, it was not so restrictive or burdensome as to violate the Constitution. The court also rejected the plaintiff's equal protection argument after finding that no fundamental right had been interfered with. *Id.,* at 1123. Finally, the court rejected the argument that the challenged ordinance impermissibly burdened interstate commerce. *Id.*

The First Circuit Court of Appeals has also rejected the argument that a non-resident bond requirement is unconstitutional. *Hawes v. Club Ecuestre El Comandante,* 535 F.2d 140 (1st Cir.1976). After holding that the plaintiffs' fundamental rights to travel and access to the courts were not impinged by the bond requirement, the court applied the rational basis test and rejected the plain-

tiffs' equal protection challenges. *Id.,* at 144–145. The court in *Hawes,* however, placed significant emphasis on the fact that the local rule being challenged allowed a district court to dispense with the bond requirement when necessary to assure a plaintiff's access to the court. *Id.,* at 143–44. Moreover, the court made clear that a district court applying the rule at issue was to consider, among other factors, "[any] ownership by a nondomiciliary plaintiff of attachable property in the district, the likelihood of success on the merits, the presence of a co-plaintiff who is domiciled in the district, the probable length and complexity of the litigation, the conduct of the litigants, and the purposes of the litigation." *Id.,* at 144. In closing, the court noted "that 'to require all foreign plaintiffs, as such, to post substantial security as a condition to access to the courts may well be an unconstitutional denial of equal protection.'" *Id., quoting Coady v. Aguadilla Terminal Inc.,* 456 F.2d 677, 679 (1st Cir.1972).

In a later case, placing particular emphasis upon the plaintiff's ability to pay, the First Circuit held that it is an abuse of discretion for a district court to fail to consider the above mentioned factors in determining whether the bond requirement should be dispensed with. *See e.g. Aggarwal v. Ponce School of Medicine,* 745 F.2d 723, 727–29 (1st Cir.1984). The court noted that:

"[w]hile it is neither unjust nor unreasonable to expect a suitor 'to put his money where his mouth is,' *cf. In re Stump,* 449 F.2d 1297, 1298 (1st Cir.1971) (per curiam), toll-booths cannot be placed across the courthouse doors in a haphazard fashion. The district court, in the exercise of its sound discretion, must settle upon an assurance which is fair in the light not only of the case itself and of the exigencies faced by the defendant, but also fair when illuminated by the actual financial situation of the plaintiff. The rule is a scalpel, to be used with surgical precision as an aid to the even-handed administration of justice, not a bludgeon to be employed as an instrument of oppression.

*Id.,* at 728.

Other courts have rejected arguments similar to those presented by Plaintiffs, but

without conducting detailed analyses. *See e.g., Brewster v. North Am. Van Lines, Inc.,* 461 F.2d 649 (7th Cir.1972); *Kreitzer v. Puerto Rico Cars, Inc.,* 417 F.Supp. 498 (D.P.R.1975); *Russell v. Cunningham,* 233 F.2d 806, 811 (9th Cir.1956).

Plaintiffs' arguments have not received strong support from courts in the past. Florida's bond requirement, however, seems unique in its failure to allow a court to dispense with the requirement when warranted by a plaintiff's indigence. Thus, particularly in light of the First Circuit opinions, Plaintiffs' have presented a number of colorable claims. For reasons stated below, however, the Court will abstain from hearing this matter until after the state courts have the opportunity to construe the challenged statute in light Article I, § 21 of the Florida Constitution.

Article I, § 21 of the Florida Constitution provides that "[t]he courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." The Florida Supreme Court has held that this right should be "construed liberally in order to guarantee broad accessibility to the courts for resolving disputes." *Psychiatric Associates v. Siegel,* 610 So.2d 419, 424 (Fla.1992). The Court accordingly has held that the right to access the courts may be abrogated only under two narrow circumstances:

> Although courts generally oppose any burden being placed on the right of a person to seek redress of injuries from the courts, the legislature may abrogate or restrict a person's access to the courts if it provides: 1) a reasonable alternative remedy or commensurate benefit, or 2) a showing of an overpowering public necessity for the abolishment of the right, *and* finds that there is an alternative method of meeting such public necessity.

*Id.* (citations omitted) (emphasis in original).

While Plaintiffs' argument would be one of first impression in the Florida courts, it appears to have substantial merit. Thus, this case may well be resolved on the basis of the Florida constitutional provision alone. It is a fundamental principle of federal jurisprudence that courts should avoid reaching federal constitutional claims if possible. As noted by the Supreme Court, "[i]f there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable." *Spector Motor Service v. McLaughlin,* 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944), *quoted in Church of Scientology Flag Service Org., Inc. v. City of Clearwater,* 777 F.2d 598, 604 (11th Cir.1985), *cert. denied,* 476 U.S. 1116, 106 S.Ct. 1973, 90 L.Ed.2d 656 (1986).

 In light of this principle, and in an effort to avoid unnecessary friction between state and federal courts, the Supreme Court approved the doctrine of abstention in the seminal case of *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Abstention allows a federal court to withhold adjudication on federal constitutional claims when it appears that the conflict presented may be avoided solely on state law grounds. By abstaining from a case, a federal court also avoids interfering with "important state functions," ruling on tentative issues of state law, and deciding federal constitutional claims prematurely. *Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 1181–82, 14 L.Ed.2d 50 (1965); *Southern Ry. Co. v. State Bd. of Equalization,* 715 F.2d 522, 527 n. 10 (11th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984); Charles A. Wright, *Handbook of the Law of Federal Courts,* The Abstention Doctrines § 52.

 Abstention should not be ordered where the state law is clear on its face, or if its meaning has been previously determined by a state court, or if the federal constitutional issue would have to be addressed regardless of how the state law were construed. Instead, the state law must be "fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question." *Harman v. Forssenius,* 380 U.S. 528, 535, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965), quoted in *Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 306, 99 S.Ct. 2301, 2312–13, 60 L.Ed.2d 895 (1979); *Edwards v. Sammons,* 437 F.2d

1240, 1244 (5th Cir.1971); *see also Barrett v. Atlantic Richfield Co.,* 444 F.2d 38, 40 (5th Cir.1971).

Since this entire case may be resolved on state constitutional grounds, abstention seems particularly appropriate here. Plaintiffs are challenging the validity of state statute on state constitutional grounds. There are no reported cases that have considered § 57.011 in light of Art. I, § 21, nor is there any definitive guidance as to how the Supreme Court of Florida would rule if presented with this issue. Thus, the validity of the statute is uncertain. *Ibarra v. Bexar County Hosp. Dist.,* 624 F.2d 44, 47 (5th Cir.1980); *see also Johns Manville Products Corp. v. Doyal,* 510 F.2d 1196, 1198 (5th Cir.1976), citing *Reetz v. Bozanich,* 397 U.S. 82, 86, 90 S.Ct. 788, 790, 25 L.Ed.2d 68 (1970); *Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 1181–82, 14 L.Ed.2d 50 (1965); *Gray Line Motor Tours, Inc. v. City of New Orleans,* 498 F.2d 293, 298 (5th Cir. 1974); Moore's Federal Practice, 0.203 (2d ed.); C. Wright, *Federal Courts* § 52 (2d ed.). The state courts have not had the opportunity to address this issue in the past, and it would be awkward for this Court to rule on this matter of first impression. While the statute seems clear on its face, Plaintiffs have made a plausible argument that it violates the Florida Constitution. Where a state statute is clear, but there is a fair possibility that it violates the state's constitution, abstention is proper so long as the state constitutional provision is not "the mirror of the federal one." *Herald Co. v. McNeal,* 553 F.2d 1125, 1130 n. 8 (8th Cir. 1977). *See also, Examining Bd. of Engineers, Architects & Surveyors v. Flores de Otero,* 426 U.S. 572, 598, 96 S.Ct. 2264, 2279, 49 L.Ed.2d 65 (1976). In this case there is no similar provision in the federal Constitution.

While "we … cannot ignore that abstention operates to require piecemeal adjudication in many courts … thereby delaying ultimate adjudication on the merits for an undue length of time," *Baggett v. Bullitt,* 377 U.S. 360, 378–79, 84 S.Ct. 1316, 1326, 12 L.Ed.2d 377 (1964), in this case, Plaintiffs claims stem from various law suits which have been brought, and which Plaintiffs intend to bring, in state courts. Thus, this litigation became more piecemeal when the parties attempted to drag the federal court into their dispute. The state court should have the first crack at this issue. This may actually save time by avoiding shuttling back and forth between state and federal court, instead of delaying the ultimate disposition of this case.

This Court will accordingly abstain from any further proceedings in this case until the parties have had the opportunity present to the state court the issue of whether Fla.Stat. § 57.011 violates Art. I, § 21 of the Florida Constitution. Should the Plaintiffs choose to submit all of their claims to the state court, they should feel free to do so. *National Ass'n for the Advancement of Colored People v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). Plaintiffs may, however, reserve their federal claims for adjudication by this Court, should such adjudication become necessary. *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 421–22, 84 S.Ct. 461, 467–68, 11 L.Ed.2d 440 (1964).

The Court has reviewed the motion and the record, and being otherwise duly advised, it is hereby:

**ORDERED** and **ADJUDGED** that as follows:

1. Plaintiffs' Motion for Preliminary Injunction, filed on January 5, 1996, is **DENIED** without prejudice;

2. Pursuant to the doctrine announced in *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), this Court hereby **ABSTAINS** from any further proceedings in this matter pending the resolution of Plaintiffs' state court claims in state court;

3. All proceedings in this matter are **STAYED;**

4. Plaintiffs are directed to file status reports with this Court every three (3) months, outlining the progress of the state court proceedings;

5. Should this matter be resolved such that this the federal issues in this case be-

come moot, the parties shall notify this Court immediately;

6. Should the state court finally deny the relief sought by Plaintiffs, Plaintiffs shall move this Court to reopen this case;

7. This case is **CLOSED** for administrative purposes.

**DONE AND ORDERED.**