519 F.2d 1090
 Marvin JONES, on his own behalf and on behalf of those
similarly situated, Plaintiff-Appellant,
v.
Fred R. DIAMOND, Individually and in his official capacity
as Sheriff of Jackson County, Mississippi, and his
agents, subordinates and employees, et
al., etc., Defendants-Appellees.
 No. 74-3098.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 26, 1975.
 
 John L. Walker, Jr., Jackson, Miss., David M. Lipman, Lawyers' Committee for Civil Rights Under Law, Washington, D. C., for plaintiff-appellant.
 Raymond L. Brown, Pascagoula, Miss., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before CLARK, Associate Justice,* and GOLDBERG and AINSWORTH, Circuit Judges.
 GOLDBERG, Circuit Judge:
 
 
 1
 This case is a virtual paradigm of the therapy afforded by Rule 23 in section 1983 claims. Marvin Jones, a black prisoner confined in jail awaiting trial,[1] instituted this suit under 42 U.S.C. § 1983 in an attempt to reform the conditions of the Jackson County jail.[2] Shortly thereafter, to his consternation, his efforts were aborted by an order of the district court denying his motion to certify the case as a class action and dismissing as defendants the individual members of the Jackson County Board of Supervisors. Regrettably, plaintiff's inattention to the details of appellate procedure compounded his difficulties. Thus, before reaching the question whether the district court's rulings were correct on the denial of the class action and the dismissal of the Board members, we must ascertain whether we have appellate jurisdiction over these orders.
 
 
 2
 Jones sued individually and on behalf of the class of all past, present, and future inmates of the Jackson County jail, alleging violations of the First, Fourth, Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Amendments to the Constitution cognizable under 42 U.S.C. § 1983. Complaining of particular discrimination against black prisoners, he also denominated a subclass of all black persons awaiting trial and incarcerated in the jail. Named as defendants were Fred R. Diamond, the Sheriff of Jackson County; United States Fidelity and Guaranty Company, surety on the sheriff's bond;[3] Roy Tootle, the deputy sheriff with responsibility for the jail; Andrew Thomas, a convicted felon serving as a trusty in the jail;[4] and Lum R. Cumbest, Edward A. Khayat, J. C. May, William T. Roberts, and Olin H. Davis, the members of the Jackson County Board of Supervisors. All defendants were sued in both their individual and official capacities. The relief requested was threefold: a judgment declaring defendants' conduct unlawful and unconstitutional; a preliminary and permanent injunction requiring comprehensive reform of the jail conditions, programs, and procedures; and damages in the amount of $500,000 compensatory and $500,000 punitive damages for the named plaintiff, and unascertained amounts for the unnamed class members.
 
 
 3
 Plaintiff's effort to serve as standard bearer for his proposed class was soon halted by the district court. His original complaint was filed on August 13, 1973, together with interrogatories to defendant Diamond. Diamond's answers to the interrogatories were properly filed with the court on September 26, 1973. The defendant members of the Board of Supervisors filed a motion requesting dismissal of the suit as to them on September 17, 1973, on the ground that they neither personally directed nor participated in any wrongful activity. On April 24, 1974, plaintiff filed his motion for an order permitting the class action under Rule 23, Federal Rules of Civil Procedure.[5]
 
 
 4
 On May 10, 1974, the district court granted the Supervisors' motion to dismiss with prejudice and denied the proposed class action. On June 14, 1974, the court amended the May 10 order as to the Supervisors to state that "there is no just reason for delay and therefore the adjudication with regard to these defendants is final,"[6] thereby permitting an appeal from that order. On the same day, the court certified the denial of the class action under 28 U.S.C. § 1292(b) for purposes of an interlocutory appeal. However, although plaintiff did file a notice of appeal on June 24, 1974, he did not apply to the Court of Appeals for permission to appeal under section 1292(b) until some ten months later, in open disregard of the statutory ten day requirement. Thus, unless we have jurisdiction of the appeal from the class action order independent of section 1292(b), we must dismiss the appeal for lack of a final judgment. See Ballas v. Symm, 5 Cir. 1974, 494 F.2d 1167, 1169; Graci v. United States, 5 Cir. 1973, 472 F.2d 124, 126, cert. denied, 1973, 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 155. Cf. Dunlop v. Ledet's Foodliner of Larose, Inc., 5 Cir. 1975, 509 F.2d 1387; Barfield v. Weinberger, 5 Cir. 1973, 485 F.2d 696.I. Appealability of Order Denying Class Action
 
 
 5
 As a general rule, an order denying a class action that simply strikes the class allegations and permits the individual case to proceed is not appealable. Greenhouse v. Greco, 5 Cir. 1974, 496 F.2d 213; Songy v. Coastal Chemical Corp., 5 Cir. 1972, 469 F.2d 709; Williams v. Mumford, D.C. Cir. 1975, 511 F.2d 363, petition for cert. pending, 44 U.S.L.W. 3033 (U.S. July 22, 1975). However, two exceptions to this rule have emerged. The first, introduced by Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528, applies where the denial of the motion virtually sounds the "death knell" to the litigation because the claims of individual class members are so small that no one person would pursue the suit alone. Appeals under the Cohen rationale are taken under 28 U.S.C. § 1291, since the practical effect of the order is to end the litigation. See generally 7A Wright & Miller, Federal Practice and Procedure § 1802 at 272 (1972). Given the facts before us, we decline to negotiate the rough terrain of Cohen, since we find it unnecessary to our analysis of plaintiff's appeal.[7]
 
 
 6
 The second road appellant may travel is smoother, though narrow. When the class action bears a symbiotic relationship to the frustration of relief, interlocutory assistance may dawn upon the jurisprudential horizon. Section 1292(a)(1) of Title 28 permits an interlocutory appeal from an order "granting, continuing, modifying, refusing, or dissolving injunctions" where
 
 
 7
 . . . the substantial effect of (the district court's) order denying leave to proceed as a class is to narrow considerably the scope of any possible injunctive relief in the event plaintiffs ultimately prevail on the merits.
 
 
 8
 Yaffe v. Powers, 1 Cir. 1972, 454 F.2d 1362, 1364. See Price v. Lucky Stores, Inc., 9 Cir. 1974, 501 F.2d 1177, 1179; Hackett v. General Host Corp., 3 Cir. 1972, 455 F.2d 618, cert. denied, 1972, 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812; Brunson v. Board of Trustees of School Dist. No. 1, 4 Cir. 1962, 311 F.2d 107, cert. denied, 1963, 373 U.S. 933, 83 S.Ct. 1538, 10 L.Ed.2d 690. In deference to the general policy of discouraging interlocutory appeals,[8] we deem it advisable to set out in some detail the circumstances under which a section 1292(a)(1) appeal will be permitted from the denial of class action certification.
 
 
 9
 The first, and perhaps obvious, requirement is that the plaintiff's prayer for an injunction must constitute the heart of the relief he seeks. The desired injunction must be capable of resolving the substantive issues of the claim; it cannot merely maintain the status quo during the litigation. Siebert v. Great Northern Development Co., 5 Cir. 1974, 494 F.2d 510. See Switzerland Cheese Ass'n v. E. Horne's Market, Inc., 1966, 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23. The rationale for this limitation lies in the purpose of section 1292 itself, which was crafted "to permit litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence." Baltimore Contractors, Inc. v. Bodinger, 1955, 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed.2d 233, 238. See New England Power Co. v. Asiatic Petroleum Corp., 1 Cir. 1972, 456 F.2d 183. If plaintiff's action here were stripped of its class character, Jones would lack standing to complain of conditions, practices, and procedures that had not touched him personally. A final injunction on the merits would be empty indeed, since he himself is no longer in jail and the possibility of his return is speculative at best. Although his claim for damages survives, the primary purpose of the complaint is to force a system-wide reform of the jail.[9] Even if the denial of Jones' class does not meet the "death knell" requirement of Cohen, a point on which we express no opinion, it surely satisfies the standard of "serious, perhaps irreparable consequence" enunciated in Baltimore Contractors. Thus, both the type of relief Jones seeks and the general purpose of section 1292 militate toward permitting this interlocutory appeal.
 
 
 10
 The second requirement for appealability is that the practical result of the order denying the proposed class must be to deny the requested broad injunction. We look in these cases, as we should in most, to the bottom line, to see if the plaintiff was effectively denied access to the courts, for the effect of the order controls the applicability of section 1292. Gray Line Motor Tours, Inc. v. City of New Orleans, 5 Cir. 1974, 498 F.2d 293, 296; United States v. Texas Education Agency, 5 Cir. 1970, 431 F.2d 1313, 1315. Cf. Eisen v. Carlisle & Jacquelin, 1974, 417 U.S. 156, 171, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732, 744-45. In Gray Line Motor Tours, this Court stated the principle as follows:
 
 
 11
 Whether a district court has rendered a decision relating to an injunction for purposes of an interlocutory appeal under the statute is not always easy to determine. However, a district court may not avoid immediate review of its determination simply by failing to characterize or label its decision as one denying or granting injunctive relief. If, for example, an action has the effect of denying the requested relief without actually making a formal ruling, then the refusal of the district court to issue a specific order will be treated as equivalent to the denial of a preliminary injunction and will be appealable. McCoy v. Louisiana State Board of Education (5th Cir. 1964), 332 F.2d 915; United States v. Lynd (5th Cir. 1952), 301 F.2d 818, cert. den., 371 U.S. 893, 83 S.Ct. 187, 9 L.Ed.2d 125.
 
 
 12
 498 F.2d at 296. In Texas Education Agency, review of an order setting a pretrial conference was permitted under section 1292(a)(1), where an injunction ordering school desegregation for the 1970-71 term was sought and the conference was set ten days after school began.
 
 
 13
 The effect of the district court's order here was to deny the broad, system-wide injunction sought by plaintiff Jones and the class he wished to represent. This is not a situation where the final injunctive order would be the same whether or not the action proceeds under Rule 23. Thus, this case is distinguishable from Williams v. Mumford, D.C. Cir. 1975, 511 F.2d 363, and Ballas v. Symm, 5 Cir. 1974, 494 F.2d 1167. In Williams, the final injunction would have ordered an end to racial discrimination by the Library of Congress with or without the class. In Ballas the central question was the validity of a questionnaire that college students were required to complete as a prerequisite to voter registration. Its constitutionality could be adjudicated whether one or many students appeared as plaintiffs. See also United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach, 5 Cir. 1974, 493 F.2d 799, 812. For the purposes of this lawsuit, the injunction requiring the defendants to submit a comprehensive jail reform plan to the court has been foreclosed as surely as if the order had spelled out the specific words "injunction denied."
 
 
 14
 No one having even a slight knowledge of jails can be anything but shocked, alarmed, and dismayed at the conditions presently prevailing in many of them. Realistically, class actions are the only practicable judicial mechanism for the cleansing reformation and purification of these penal institutions. We therefore hold that where the denial of permission to proceed as a class is synonymous with the denial of the broad injunctive relief sought on the merits, and where the injunction is the primary purpose of the suit, the order is appealable under section 1292(a)(1) as an order "refusing" an injunction.
 
 II. Refusal to Certify Class
 
 15
 The district court's order of May 10, 1974, denying the proposed class, stated:
 
 
 16
 Proposed class actions are couched solely in conclusions of the pleader with no ultimate factual background to support it. It is not apparent to the Court at this time that any member of such proposed class action has a claim in the necessary jurisdictional amount and the statutory nature of the class does not reveal the necessary facts as to mootness, and such proposed class action plaintiffs are not too numerous to state for an orderly administration of justice; and at this time, permission to proceed with a class action in this case is denied.
 
 
 17
 It appears from this that four deficiencies led to the court's conclusion: (1) inadequate pleadings and factual background; (2) failure to satisfy a jurisdictional amount; (3) possible mootness; and (4) failure to satisfy the numerosity requirement of Rule 23(a)(1), Federal Rules of Civil Procedure. The second and third points can be treated briefly. Jurisidictional amount, of course, poses no obstacle in the course that plaintiff and his alleged class must run, for Jones complains of state action in violation of rights secured by the Constitution.[10] Mootness, though often a serious difficulty in class action suits where the named plaintiff's claim becomes moot before class certification,[11] is a similarly illusory problem in light of the Supreme Court's recent discussion in Gerstein v. Pugh, 1975, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54:
 
 
 18
 Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures. The claim, in short, is one that is distinctly "capable of repetition, yet evading review."
 
 
 19
 At the time the complaint was filed, the named respondents were members of a class of persons detained without a judicial probable cause determination, but the record does not indicate whether any of them were still in custody awaiting trial when the District Court certified the class. Such a showing ordinarily would be required to avoid mootness under Sosna. But this case is a suitable exception to that requirement. See Sosna, supra, 95 S.Ct. at 559 n.11, 42 L.Ed.2d 532; cf. Rivera v. Freeman, 469 F.2d 1159, 1162-1163 (CA 9 1972). The length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial. It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class. Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain.
 
 
 20
 420 U.S. at 110, 95 S.Ct. at 861, 43 L.Ed.2d at 63 n.11. See also note 1, supra.
 
 
 21
 The district court's first and fourth points pose more serious questions. If the scanty factual support relieved the trial court of further responsibility with respect to the nascent class action, we need not reach the numerosity issue. If, however, the circumstances taken as a whole had sufficient momentum to carry the class over the summary dismissal hurdle, then the requirements of Rule 23(a) and (b) will command closer attention.
 
 
 22
 Although the complaint refers throughout to injuries suffered by all class members, the pleading offered to support the class simply tracks the language of Rule 23, Federal Rules of Civil Procedure.[12] Without more, mere mimicry is insufficient to undergird a decision either way on the propriety of class certification. See Weathers v. Peters Realty Corp., 6 Cir. 1974, 499 F.2d 1197, 1200; Rossin v. Southern Union Gas Co., 10 Cir. 1973,472 F.2d 707, 712. Plaintiff relies heavily on the answers to his first set of interrogatories to defendant Diamond to flesh out the Rule 23 skeleton. Unhappily, for reasons best known to himself, he did not formally introduce these interrogatories into evidence when the court announced it would decide the class certification question. The trial judge, therefore, was not legally compelled to consider the facts revealed through this discovery.[13]
 
 
 23
 We believe that this official paucity of support for plaintiff's proposed class is not determinative of the question whether or not the class should be certified, for in class actions under the civil rights statutes, the trial court bears a substantial management responsibility over the conduct of the litigation, which arises the moment the class is requested. The first decision the court must make relates to the timing of the determination of the class. Rule 23(c) requires the decision on maintainability "as soon as practicable after the commencement of an action." Practicality, in this context, must be judged on the basis of factors such as the detail in the pleadings, the amount of discovery pending and completed, the nature of the suit, fairness to the parties, and judicial efficiency. These considerations may dictate the necessity of a preliminary evidentiary hearing to insure that the court's decision on class certification rests on an adequate record. See Price v. Lucky Stores, Inc., 9 Cir. 1974, 501 F.2d 1177, 1179. See also Huff v. N.D. Cass Co., 5 Cir. (en banc) 1973, 485 F.2d 710, 712; Boggs v. Alto Trailer Sales, Inc., 5 Cir. 1975, 511 F.2d 114; Johnson v. Georgia Hwy. Express, Inc., 5 Cir. 1969, 417 F.2d 1122. If the court does choose to rule on class certification at an early stage of the litigation before the supporting facts are fully developed, then it should err "in favor and not against the maintenance of the class action, for (the decision) is always subject to modification . . . ." Esplin v. Hirschi, 10 Cir. 1968,402 F.2d 94, 99, cert. denied, 1969, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459. Accord, Kahan v. Rosenstiel, 3 Cir. 1970, 424 F.2d 161, 169, cert. denied sub nom. Glen Alden Corp. v. Kahan, 1970, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290; Green v. Wolf Corp., 2 Cir. 1968, 406 F.2d 291, 298, cert. denied, 1969, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766.
 
 
 24
 If the court finds on the basis of these factors that an evidentiary hearing on the class is appropriate or essential, it should inform the parties that a full hearing will precede the decision on certification, and that any facts on which they intend to rely to support the motion must be introduced in evidence at that time. Once the court has thus delineated the nature and scope of the hearing, the burden of proof on the propriety of certification rests with the advocate of the class.[14] See Rossin v. Southern Union Gas Co., supra; Poindexter v. Teubert, 4 Cir. 1972, 462 F.2d 1096.
 
 
 25
 We hold that under the circumstances of this case, the trial court abused its discretion in deciding against the class solely on the basis of the initial pleadings.[15] In class actions, particularly in the civil rights field, the general rules on burden of proof must not be applied rigidly or blindly. The court too bears a great responsibility to insure the just resolution of the claims presented; it should be loathe to deny the justiciability of class actions without the benefit of the fullest possible factual background. As the First Circuit stated in Yaffe v. Powers, supra :
 
 
 26
 At this juncture, unless a claim is patently frivolous, (the district court) should ask itself: assuming there are important rights at stake, what is the most sensible approach to the class determination issue which can enable the litigation to go forward with maximum effectiveness from the viewpoint of judicial administration?
 
 
 27
 454 F.2d at 1367. Cf. Boggs v. Alto Trailer Sales, Inc., supra; Kamm v. California City Development Co., 9 Cir. 1975, 509 F.2d 205, 210: Price v. Lucky Stores, Inc., supra.
 
 
 28
 Far from being the scourge of modern jurisprudence, class actions contribute to its salubrity and vitality. The modern manifestation of the class action is an efficacious jurisprudential tool, whose applicability is neither universal nor monocentric. Rather, the trial court must ascertain the appropriateness of the class procedure only after a sensitive weighing of all the facts. We therefore remand this case to the district court for a full evidentiary hearing on the determination of the class.
 
 III. Evidentiary Hearing on Class
 
 29
 Since the hearing below will, of course, be open to evidence on all points relating to the propriety of the class action, we deem it advisable to add a few words about the requirements of Rule 23. As an initial matter, it is important to remember that Rule 23(a) must be read liberally in the context of civil rights suits.[16] Rodriguez v. East Texas Motor Freight, 5 Cir. 1974, 505 F.2d 40, 50; 7 Wright & Miller, Federal Practice and Procedure § 1771 at 663 (1972). This is especially true when the class action falls under Rule 23(b)(2), where
 
 
 30
 the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. . . .
 
 
 31
 As we stated in Davis v. Weir, 5 Cir. 1974, 497 F.2d 139, 146, interpreting Rule 23(b)(2):This language does not mandate that all members of the (b)(2) class be aggrieved by or desire to challenge the defendant's conduct. See, e. g., Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920 (2d Cir. 1968). It does require, however, that the conduct or lack of it which is subject to challenge be premised on a ground that is applicable to the entire class.
 
 
 32
 Since it is not necessary that the members of the class be so clearly identified that any member can be presently ascertained, Carpenter v. Davis, 5 Cir. 1970, 424 F.2d 257, 260, the 23(b)(2) class action is an effective weapon for an across-the-board attack against systematic abuse.[17] See Foster v. Sparks, 5 Cir. 1975, 506 F.2d 805; Long v. Sapp, 5 Cir. 1974, 502 F.2d 34. Indeed, its usefulness in the civil rights area was foreseen by the drafters of the revised rule. Advisory Committee's Note, 39 F.R.D. 73, 102 (1966).
 
 
 33
 The general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement of Rule 23(a) (1). Although the district court has great discretion on the numbers involved and the practicality of joinder, its freedom is not unlimited. Wide discretion "must be balanced with the nature and intent of the Civil Rights Act, whose purpose is to provide a broad remedy for all who fit the plaintiff's class." Carey v. Greyhound Bus Co., 5 Cir. 1974, 500 F.2d 1372, 1380.[18] Smaller classes are less objectionable where, as in the case before us, the plaintiff is seeking injunctive relief on behalf of future class members as well as past and present members. See Jack v. American Linen Supply Co., 5 Cir. 1974, 498 F.2d 122; Davy v. Sullivan, M.D.Ala.1973 (three judge court), 354 F.Supp. 1320. Thus, in evaluating the proffered evidence at the evidentiary hearing for class certification, the district court should be guided by the generous policies underlying the class action device and civil rights legislation. We do not fetter the trial court's discretion on remand, confident that generosity rather than penury will guide his decision processes. Niggardliness in determining maintainability must be shunned, for unless class actions are hospitably received into our judicial system, many valid constitutional claims may be stymied.
 
 
 34
 IV. Dismissal of Members of Board of Supervisors
 
 
 35
 The district court's May 10 order dismissing the members of the Board of Supervisors was amended on June 14 to add a certification pursuant to Rule 54(b), Federal Rules of Civil Procedure, that the adjudication with respect to those defendants was final and no just reason for delay existed. Consequently, appellate jurisdiction over this branch of the appeal exists under 28 U.S.C. § 1291.
 
 
 36
 Appellees argue that the individual members of the Board of Supervisors are immune from liability under the civil rights act, because they were acting in good faith and exercising sound discretion, and because they had issued no personal directives and had assumed no personal involvement. Since we believe that this point is governed by the recent Supreme Court decisions in Wood v. Strickland, 1975, --- U.S. ---, 95 S.Ct. 992, 43 L.Ed.2d 214 and Scheuer v. Rhodes, 1974, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90, we reject these arguments and reverse the district court's order of dismissal.
 
 
 37
 Under Mississippi law, the Supervisors are charged with the duty of examining the condition of the jail and taking appropriate remedial measures.[19] This statutory duty brings the acts or omissions of the Supervisors within the reach of 42 U.S.C. § 1983, unless they are protected by absolute immunity. Absolute immunity, however, is a juridical relic, expressly rejected by the Supreme Court in both Wood and Scheuer. The Court opted instead for a qualified immunity, describing its test as follows in Scheuer :
 
 
 38
 (I)n varying scope, a qualified immunity is available to officers of the executive branch of Government, the variation dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good faith belief, that affords basis for qualified immunity of executive officers for acts performed in the course of official conduct.
 
 
 39
 416 U.S. at 247, 94 S.Ct. at 1692, 40 L.Ed.2d at 103. In the context of school discipline, Wood held that a school board member has no immunity under section 1983
 
 
 40
 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student.
 
 
 41
 --- U.S. at ---, 95 S.Ct. at 1001, 43 L.Ed.2d at 225. Qualified immunity therefore applies to state officers ranging from the Governor of Ohio, in Scheuer, to a local school board, in Wood. The availability of the immunity defense here is similarly dependent on all the circumstances. We write no encyclopedia for immunity or liability. We simply conclude by saying that the trial court was not justified in declaring the Supervisors immune without a factual examination.[20] On remand, the court should look to the guidelines expressed in Wood and Scheuer in arriving at his reasoned decision of immunity or nonimmunity.
 
 V. Conclusion
 
 42
 Admirably suited as the class action is to the adjudication of civil rights claims, simplicity is not often counted among its virtues. Rather, the trial court must strike a delicate balance among the myriad competing interests that emerge in such a suit in order to facilitate full implementation of the public-oriented policies embodied in Rule 23. Since this approach did not characterize the proceedings below, plaintiff is entitled to another chance to demonstrate the maintainability of his class. His invocation of section 1983 also entitles him to move against the Board of Supervisors members, unless they can prove that their actions fall within the parameters of the qualified immunity defense recognized by the Supreme Court. We therefore reverse and remand this case for further proceedings not inconsistent with this opinion.
 
 
 43
 Reversed and remanded.
 
 
 
 *
 Of the Supreme Court of the United States (Retired), sitting by designation
 
 
 [1]
 Although counsel on oral argument stipulated that Jones himself is no longer in the county jail, mootness poses no problem, for we note that this case falls squarely within "that narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class." Gerstein v. Pugh, 1975, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54, 63 n.11. See Cruz v. Estelle, 5 Cir. 1974, 497 F.2d 496; Weathers v. Peters Realty Corp., 6 Cir. 1974, 499 F.2d 1197; Washington v. Lee, M.D.Ala.1966 (three judge court), 263 F.Supp. 327, aff'd, 1968, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212. Furthermore, plaintiff Jones still has a live claim for compensatory and punitive damages, regardless of the status of his claim for an injunction
 
 
 [2]
 The complaint alleges excessive confinement in cells; unsanitary and unsafe conditions, such as roach and rodent infestation, mildew, and mattresses reeking of vomit and excrement; the absence of fair disciplinary procedures; mail censorship; physical abuse; inadequate medical attention; denial of amenities such as recreational and educational facilities, books, and satisfactory visitation rights; food contaminated with rats and roaches; improper use of a trusty system; and racial discrimination against black inmates
 
 
 [3]
 This defendant was added by an amendment to the complaint permitted by the court in its order of May 10, 1974
 
 
 [4]
 According to the complaint, the trusties are responsible for the enforcement and implementation of the policies, procedures, and rules of the jail, under the supervision of the county officials
 
 
 [5]
 This motion referred to "all persons who were incarcerated at the filing of this complaint" instead of all "past" prisoners, as the original complaint had stated. Given our resolution of the case, this discrepancy is irrelevant
 
 
 [6]
 Rule 54(b), Federal Rules of Civil Procedure, provides in pertinent part:
 When more than one claim for relief is presented in an action, whether as a claim, counterclaim, crossclaim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.
 
 
 [7]
 The experience of other circuits illustrates the wisdom of a narrow construction of this exception to the finality rule. See, e. g., King v. Kansas City Southern Industries, Inc., 7 Cir. 1973, 479 F.2d 1259; Caceres v. International Air Transport Ass'n, 2 Cir. 1970, 422 F.2d 141
 
 
 [8]
 See Dunlop v. Ledet's Foodliner of Larose, Inc., 5 Cir. 1975, 509 F.2d 1387
 
 
 [9]
 In his prayer for relief, which contains sixteen counts, plaintiff requests several detailed injunctions. The damage claims are buried in paragraphs 12 and 13. Under the heading "Description of the Problem," introducing the complaint, plaintiff states:
 (7) In this civil action, untried and unsentenced persons detained in Jackson County Jail, who are incarcerated pending trial, seek a declaration that the treatment to which they are subjected is unconstitutional, and they seek to invoke this Court's equitable power to prevent the continuation of this system of treatment.
 No mention whatsoever is made of a claim for monetary damages, underscoring the secondary nature of this type of relief.
 
 
 [10]
 Jurisdiction, alleged under 28 U.S.C. §§ 1331 and 1343(3), can be sustained in a section 1983 action under section 1343(3) alone, which contains no jurisdictional amount requirement
 
 
 [11]
 See Board of School Comm'rs v. Jacobs, 1975, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74; Sosna v. Iowa, 1975, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532
 
 
 [12]
 The complaint also purports to create a defendant class, composed of all sheriffs, all supervisors, and all trusties. Since none of the briefs or orders appears to deal with this aspect of the case, we express no opinion as to its resolution
 
 
 [13]
 Rule 33, Federal Rules of Civil Procedure, provides that "the answers (to interrogatories) may be used to the extent permitted by the rules of evidence." This provision has been construed to require a formal offer of evidence. Heilig v. Studebaker Corp., 10 Cir. 1965, 347 F.2d 686, 689; see United States v. Gulf Development Co., S.D.Ala.1972, 344 F.Supp. 1148, 1154, aff'd, 472 F.2d 1407 (1973); but see Zamora v. New Braunfels Indep. School Dist., W.D.Tex.1973, 362 F.Supp. 552, 554
 
 
 [14]
 It appears here that plaintiffs were given no opportunity at all to introduce evidence, and so never had the chance to bring burden of proof considerations into play
 
 
 [15]
 We note that Rule 8, Federal Rules of Civil Procedure, requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," and that it directs that "(a)ll pleadings shall be so construed as to do substantial justice." Therefore, plaintiff's class allegations were not defective as a matter of pleading practice
 
 
 [16]
 The Fourth Circuit has expressly upheld the appropriateness of 42 U.S.C. § 1983 and class treatment on facts similar to those before us, where plaintiff was part of an institutional population that had suffered brutal treatment, in Hayes v. Secretary of Dept. of Public Safety, 4 Cir. 1972, 455 F.2d 798, 801
 
 
 [17]
 So long as the predominant purpose of the suit is for injunctive relief, the fact that a claim for damages is also included does not vitiate the applicability of 23(b)(2). See Pettway v. American Cast Iron Pipe Co., 5 Cir. 1974, 494 F.2d 211; Robinson v. Lorillard Corp., 4 Cir. 1971, 444 F.2d 791, cert. dism'd, 1971, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655
 
 
 [18]
 We note that a class of twenty was upheld in Arkansas Education Ass'n v. Board of Education, 8 Cir. 1971, 446 F.2d 763, and that classes of twenty-eight and ten were considered conceivable in Carey v. Greyhound Bus Co., 5 Cir. 1974, 500 F.2d 1372, and Davy v. Sullivan, M.D.Ala.1973 (three judge court), 354 F.Supp. 1320
 The public record here discloses that at the time this suit was filed, forty-eight persons were incarcerated in the Jackson County jail.
 
 
 [19]
 Miss.Code Ann. § 19-5-1 (1972) provides:
 At least once in every three months, and as often as it may think proper, the board of supervisors shall examine into the state and condition of the jail, in regard to its safety, sufficiency, and accommodation of the prisoners, and from time to time take such legal measures as may best tend to secure the prisoners against escape, sickness, and infection, and have the jail cleansed. If it shall appear from such examination that the sheriff has neglected his duty in the manner of keeping the jail, or keeping and furnishing the prisoners, the board shall fine him, as for a contempt, in any sum not exceeding one hundred dollars.
 
 
 [20]
 The Supervisors are also proper parties insofar as the power to order and implement the system-wide reform plaintiff demands lies solely in their hands, by virtue of their statutory duties and their control over the budget. Cf. Build of Buffalo, Inc. v. Sedita, 2 Cir. 1971, 441 F.2d 284, 287; see also Taylor v. Sterrett, 5 Cir. 1974, 499 F.2d 367