Dorothy M. EZELL, Ronald S. Smith and Walter Lee Mixon, Administrator of the Estate of Bettye Jo Powell Evans, deceased, Plaintiffs-Appellants,

v.

MOBILE HOUSING BOARD, et al., Defendants-Appellees.

No. 81–7032.

United States Court of Appeals, Eleventh Circuit.

July 6, 1983.

Blacksher, Menefee & Stein, P.A., Gregory B. Stein, Mobile, Ala., for plaintiffs-appellants.

Mylon R. Engel, Edgar P. Walsh, Mobile, Ala., for Mobile Co. Personnel Bd.

Collins, Galloway & Smith, Thomas M. Galloway, William H. Sisson, Mobile, Ala., for Mobile Co. Housing Bd.

Before RONEY, TJOFLAT and FAY, Circuit Judges.

TJOFLAT, Circuit Judge:

This appeal involves a suit brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 (1976 & Supp. V 1981), alleging employment discrimination based on race.[1] Several claims of error are presented. We reverse and remand the district court's ruling against one claimant, Dorothy M. Ezell; we find no merit in the remaining claims.

### I.

On March 17, 1976, after properly filing charges with the Equal Employment Opportunity Commission (EEOC) and receiving a

---

1. The suit also presented claims for relief under 42 U.S.C. §§ 1981, 1983, 1985(3) and 1986 (1976). Only the Title VII claims are relevant to this appeal, however.

right-to-sue letter, Dorothy M. Ezell brought this suit on behalf of herself and all others similarly situated seeking legal and equitable relief against two agencies of Mobile County, Alabama: the Housing Board and the Personnel Board.[2] The purpose of the Personnel Board at all times relevant to this suit was to govern by civil service rules the classified service of all local governments and agencies in Mobile County. Among other things, the Personnel Board administered both entrance-level and promotional examinations for classified positions in county agencies, including the Housing Board.

Ezell, a black classified employee with the Housing Board, alleged various discriminatory employment acts and practices on the part of each defendant. She asserted that the Personnel Board administered to her a racially discriminatory promotional examination for the classified position of Social Services Advisor with the Housing Board, and that although she passed this examination and received Personnel Board certification for the position she sought, the Housing Board considered her low performance on this exam in denying her the promotion. She alleged also that the examination was a sham because the Housing Board had preselected the white employee who eventually got the promotion. Finally, she complained about low service ratings she had received from the Housing Board, about the Personnel Board's failure to investigate her low service ratings, about the failure of the Housing Board to promote her on various occasions, about retaliation on the part of both defendants for her filing of charges with the EEOC, and about a general campaign of discriminatory harassment by both defendants.

**2.** Also named as defendants in both their individual and representative capacities were the chairmen, the board members, and certain executive officers of the Housing Board and the Personnel Board. All references herein to either the Housing Board or the Personnel Board include the respective individual defendants.

**3.** Smith's right-to-sue letter was issued by the EEOC after Smith moved to intervene; Smith subsequently amended his complaint to reflect

On August 20, 1976, Ronald S. Smith, a black probationary employee in the classified position of Social Worker with the Housing Board, intervened in the action after properly filing charges with the EEOC and receiving a right-to-sue letter.[3] Smith alleged that the Housing Board discriminated against him by discharging him from his probationary position. He sought reinstatement to his position with the Housing Board, along with back pay, and he sought compensatory and punitive damages against both defendants.[4]

On August 25, 1976, the court certified the following class:

(1) All black persons who have since August 11, 1973, been employed or who may in the future be employed with the Mobile Housing Board; and

(2) All black persons who have since August 11, 1973, applied unsuccessfully to the Mobile Housing Board or the Mobile County Personnel Board for employment in jobs within the classified service with the Mobile Housing Board, or who may in the future apply unsuccessfully to the Mobile Housing Board or the Mobile County Personnel Board for employment in jobs within the classified service with the Mobile Housing Board.

The Housing Board subsequently moved the court to reconsider its class certification. On December 9, 1977, the district court ordered an evidentiary hearing on the certification issue. In the same order, the court severed the plaintiffs' claims against the Housing Board from their claims against the Personnel Board, finding that the claims did not present common issues of fact and law. On February 22, 1978, following the evidentiary hearing, the district court decertified the class because there

this fact. The defendants did not object to this procedure.

**4.** Smith alleged no facts that stated a claim for relief under any theory of recovery against the Personnel Board. That he had no claim against the Personnel Board became apparent as the case progressed to trial; accordingly, the court summarily dismissed his complaint against the Board.

was insufficient evidence of class-wide discrimination against either the Housing Board or the Personnel Board.

On February 28, 1978, the court granted Bettye Jo Powell Evans leave to intervene against the Personnel Board. Evans, a black applicant for the classified position of Accountant I, alleged that the Personnel Board administered to her a racially discriminatory examination which she failed to pass. Evans sought various forms of legal and equitable relief.

On August 7, 1978, the claims of Ezell and Smith against the Housing Board commenced before a jury.[5] After seven days of testimony, the jury returned verdicts against both plaintiffs and in favor of the Housing Board. On September 22, 1980, the claims of Ezell, Smith, and Evans against the Personnel Board came to trial before the court. On December 5, 1980, the court ruled in favor of the Board on all of the plaintiffs' claims, and entered final judgment thereon.

All three plaintiffs appealed, and they now raise four issues:

1. Did the district court err in decertifying the class?

2. Did the district court err in dismissing Evans' claim because of her failure to file a complaint with the EEOC?

3. Did the district court err in holding that Ezell failed to make out a prima facie case of discrimination under either a theory of discriminatory intent or discriminatory impact?

4. Did the district court's failure to give certain jury instructions require reversal of the claims of Ezell and Smith against the Housing Board?

We affirm the district court's rulings on issues 1, 2, and 4 listed above.[6] We reverse the district court's ruling on issue 3 and remand Ezell's claim against the Personnel Board for further proceedings consistent with this opinion.

## II.

The first issue appellants present is whether the district court erred in decertifying this action as a class action. Initially, we note that it is irrelevant that the district court initially certified a class. "Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation." *General Telephone Co. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982) (citing Fed.R.Civ.P. 23(c)(1)). Second, "a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Falcon*, 457 U.S. at 161, 102 S.Ct. at 2372–73. This analysis requires the district court to distinguish between:

(a) an individual's claim that he has been denied a promotion [for example] on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims.

*Id.* 157, 102 S.Ct. at 2371 (footnote omitted). Third, "[i]t is well settled that questions concerning class certification are left to the sound discretion of the district court." *Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339, 1347 (11th Cir.1983). With these prin-

---

**5.** These plaintiffs made timely demand for a jury trial on all their claims against all defendants, for both legal and equitable relief. In the trial of their case against the Housing Board, the court submitted to the jury, however, only their claims for compensatory and punitive damages allegedly caused by the Board's tortious conduct against them on the job and its retaliation for their filing of EEOC charges. After the jury found for the Housing Board, the plaintiffs withdrew their demand for a jury trial against the Personnel Board.

**6.** Because we hold the district court did not err in decertifying the class, we necessarily reject appellants' contentions that the court erred in failing to find class-wide liability on the part of each defendant.

ciples in mind, we review the decertification ruling of the district court.

■ Because "in class actions under the civil rights statutes, the trial court bears a substantial management responsibility over the conduct of the litigation," the district court properly conducted an evidentiary hearing on the propriety of the litigation proceeding as a class action. *Jones v. Diamond,* 519 F.2d 1090, 1098 (5th Cir.1975). We have instructed trial courts on the nature of such a hearing:

If the court finds . . . that an evidentiary hearing on the class is appropriate or essential, it should inform the parties that a full hearing will precede the decision on certification [or decertification], and that any facts on which they intend to rely to support the motion must be introduced in evidence at that time. Once the court has thus delineated the nature and scope of the hearing, the burden of proof on the propriety of certification rests with the advocate of the class.

*Id.* at 1099 (footnote and citations omitted).

■ In this case, appellants simply failed to satisfy their burden of proof that class certification was proper. Instead of introducing evidence of class-wide discrimination, appellants introduced only evidence of the two Boards' treatment of them individually. For example, Ezell testified that she took a Personnel Board test for a promotion with the Housing Board, that she passed the test, but that she did not get the promotion because the job was given to a white person who achieved a higher score on the exam. Ezell also testified that she was harassed at work for filing a complaint with the EEOC. Smith testified primarily about his personality conflict with his su-

pervisor at the Housing Board. Evans, who at the time of decertification was not yet a party, testified that she failed the Personnel Board exam for an accounting position, despite her lengthy experience as an accountant. This was the extent of the evidence introduced at the hearing.

Although appellants introduced absolutely no evidence at the evidentiary hearing to support their allegations of class-wide discrimination, they attempt to rely on appeal on certain statistical "exhibits" concerning Personnel Board examinations as evidence of class-wide discrimination. They attempt to rely also on allegations of wage disparity and preferential hiring. These "exhibits" and allegations, however, were merely part of appellants' motions for partial summary judgment and for class certification, which were pending at the time of decertification. They were never introduced as evidence at the decertification hearing. Thus, even if appellants' "exhibits" and allegations are probative of class-wide discrimination, because they were not presented to the district court as evidence on the issue of certification the court could not consider them.[7]

In sum, appellants failed to introduce any evidence of class-wide discrimination; they presented merely individual claims of discrimination. The district court, faced only with claims of individual discriminatory treatment, was well within its discretion in decertifying the class. We therefore affirm its ruling.

### III.

■ The second issue presented is whether the district court erred in denying Evans' Title VII claim because she failed to file a complaint with the EEOC.[8] "The timely

---

7. *Cf. Jones v. Diamond,* 519 F.2d 1090, 1098 (5th Cir.1975) (footnote omitted):

Plaintiff relies heavily on the answers to his first set of interrogatories to defendant Diamond to flesh out the Rule 23 skeleton. Unhappily, for reasons best known to himself, he did not formally introduce these interrogatories into evidence when the court announced it would decide the class certification question. The trial judge, therefore, was not legally compelled to consider the facts revealed through this discovery.

8. Evans' death on May 10, 1981, during the pendency of this appeal, largely mooted her claim. We granted the appellants' motion to substitute Evans' personal representative in Evans' place. Evans, along with the other appellants, had stricken all claims for damages from her complaint against the Personnel Board in order to avoid a jury trial. Obviously, Evans' claims for injunctive and declaratory relief have been rendered moot. Nevertheless, Evans' estate could secure some monetary re-

filing of an EEOC complaint is a prerequisite to a Title VII suit." *Allen v. United States Steel Corp.,* 665 F.2d 689, 695 (5th Cir. Unit B 1982). However, "[i]n a multiple-plaintiff, non-class action suit, if one plaintiff has filed a timely EEOC complaint as to that plaintiff's individual claim, then co-plaintiffs with individual claims arising out of similar discriminatory treatment in the same time frame need not have satisfied the filing requirement." *Id.* The precise inquiry is whether the claim of the non-filing plaintiff(s) is similar enough to that of the filing plaintiff(s), that "the purpose of [the filing requirement] that the settlement of grievances be first attempted through the office of the EEOC" will not be frustrated by invoking the "single-filing rule." *See Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 498 (5th Cir.1968).

It is undisputed that Ezell and Smith properly filed their EEOC complaints in this case and received right-to-sue letters. The question presented is, therefore, whether Evans' claim of discrimination was similar enough to either Ezell's claim or to Smith's claim for the district court to invoke the single-filing rule. It is clear that Evans' claim had little to do with Smith's claim. His claim was actually against the Housing Board.[9] He alleged that the Housing Board discriminated against him in discharging him from his position as a probationary employee. In contrast, Evans' claim was solely against the Personnel Board and was not a claim of discriminatory discharge. Her sole complaint involved the test she had to take for the classified position of Accountant I. We find nothing similar in the claims of Evans and Smith.

Whether Evans' claim was similar enough to Ezell's to satisfy the single-filing rule is a closer question because both plaintiffs alleged discriminatory testing by the Personnel Board. The similarity between the claims ended there, however. Evans was not an employee with the Housing Board but Ezell was. While Evans' sole grievance

lief if she were to prevail on the merits in the form of costs and attorneys' fees, and arguably backpay. Therefore, we think Evans' claim is not moot.

concerned the Personnel Board examination she failed, Ezell alleged various acts of discrimination of the Housing Board and the Personnel Board. She complained not only about the Personnel Board examination she took, but about low service ratings she received from the Housing Board, about the Housing Board's failure to promote her in other instances and its retaliation for her filing of EEOC charges, and about a general campaign of discriminatory harassment on the part of both defendants. In fact, in her original complaint, Ezell did not even question the validity of the Personnel Board examination, but rather alleged that the administration of the examination was a sham because both defendants had already decided that a white person would fill the position. Eventually, Ezell did attack the test itself as being racially discriminatory but such claim was only a part of her broader claim alleging a campaign of discriminatory treatment.

■ We hold the district court was correct in not applying the single-filing rule. Evans' claim differed from those of Smith and Ezell. Evans alleged only that the Personnel Board had administered to her a racially discriminatory examination. Smith's claim did not involve testing, but rather alleged discriminatory discharge on the part of the Housing Board. Ezell launched a broad-based attack against both defendants alleging various instances of discrimination in an ongoing campaign of discrimination, of which the examination she took was only a small part. It is a distinct possibility that Evans could have settled her claim with the Personnel Board during EEOC proceedings, although neither the Smith nor the Ezell claims were so settled. The failure of Smith and Ezell to settle had nothing to do with Evans' claim. Evans' filing was necessary in this case to further the goal of settlement through the EEOC. We affirm the district court's ruling.

9. See note 4 *supra.*

## IV.

The third issue presented is whether the district court erred in denying Ezell's claim against the Personnel Board because her statistical evidence failed to prove a prima facie case of discrimination. Ezell presented both theories of discrimination under Title VII: that she was the victim of deliberate discriminatory treatment and that she was the victim of the disparate impact produced by a facially neutral promotional examination. *See Eastland v. Tennessee Valley Authority,* 704 F.2d 613, 618–19 (11th Cir.1983). The district court found that the sample size of persons who took the examination about which Ezell complained was too small for it to draw any conclusion concerning adverse impact under either an impact or a treatment theory on black persons who took the promotional examination for the job of Social Services Advisor. All four whites who took the examination passed; three of the four blacks who took the examination failed. Ezell passed the examination and came in second. The district court concluded that these test results were insufficient to establish a case of discrimination under either of Ezell's alternative theories and therefore of no probative value.

Standing alone, perhaps the above evidence was insufficient to make out a prima facie case under either theory. But the court ignored additional statistical evidence Ezell introduced. This evidence showed that on 29 examinations the Personnel Board administered, 805 out of 1,242 whites passed, for an approximate pass rate of 65%, while 230 out of 605 blacks passed, for an approximate pass rate of 38%. In addition, the Personnel Board admitted that 18 of the 29 examinations were not job-related. The district court made no mention in its order why it refused to consider this evidence under either of Ezell's theories.

■ In our view the aforementioned evidence is highly relevant to a showing of discriminatory intent. We do not hold that this evidence, coupled with the other evidence produced, establishes intent as a matter of law. Nevertheless, we believe that, unless the rules of evidence dictate otherwise, both the statistical evidence about Ezell's examination and the fact that the exam was not job-related, along with the evidence concerning other Personnel Board examinations, should be considered on the issue of discriminatory intent because such evidence appears plainly relevant thereto. Therefore, we remand this case to the district court to reconsider its finding of lack of discriminatory intent in light of the aforementioned evidence, or else articulate reasons why it will not consider such evidence.

The statistical evidence concerning all the Personnel Board examinations may also be relevant to Ezell's impact case. Again, we can ascertain no reason why the district court refused to consider this evidence because its order gives no explanation. Thus, we remand on this issue also.

## V.

■ Appellants' last argument may be dealt with summarily. Appellants contend that the district court erred in failing to give certain jury instructions in their case against the Housing Board. Fed.R.Civ.P. 51 provides in relevant part: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Appellants never objected to the district court's refusal to give their proposed instructions. Thus, we reject appellants' final argument.

AFFIRMED in part; REVERSED in part and REMANDED.